IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN L. CRAYTON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:07cv626 MEF |
| ALABAMA DEPARTMENT OF AGRICULTURE & INDUSTRIES, | ) ) ) |
| Defendant. | ) |

## AMENDED COMPLAINT

**COMES NOW** John L. Crayton (Plaintiff), and amends his complaint against Alabama Department of Agriculture & Industries and its agents and representatives (Defendant) hereby complains as set forth herein below.

### JURISDICTION

1. This Court has jurisdiction over the litigation herein pursuant to 28 U.S.C. Sections 1331 and 1343, 42 U.S.C., Section 2000e and Retaliation.

2. Plaintiff has fulfilled all conditions precedent to the institution of this action.

### VENUE

3. Defendant is located and/or doing business within this judicial district (Middle District and the Northern Division of Alabama). This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under

1

42 U.S.C. Section 2000(e)-5(f) (3), 28 U.S.C. Section 1391(b) and Retaliation.

## PARTIES

4. Plaintiff John L. Crayton, hereinafter referred to as "Plaintiff," is an African-American male resident of the United States, residing in Montgomery County, Alabama. Plaintiff is a resident of this judicial district, and has been employed by Defendant at all times material hereto. Plaintiff is a member of the protected class for race within the meaning of Title VII. Plaintiff is also an employee of Defendant within the meaning of Title VII.

5. Defendant, Ala bama Department of Agriculture & Industries, hereinafter referred to as "Department" is a state agency and is authorized to do business in the State of Alabama, and employs at least fifteen (15) persons and otherwise meets the jurisdictional prerequisites of Title VII.

## NATURE OF THE CASE

6. This is a lawsuit brought by Plaintiff seeking permanent relief from unlawful discriminating practices by Defendant. Plaintiff has been adversely affected by discrimination involving promotion, compensation, assignments, retaliation and other terms and conditions of employment as a result of Defendant failing to remedy systemic employment discrimination on the basis of race. The

practices committed and continuing to be committed by Defendant violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq. ("Title VII").

## FACTUAL BACKGROUND

7. Plaintiff first began working for Defendant on or about May 19, 1976.

8. From January 2002 to July 2006, Plaintiff was constantly harassed and discriminated in every aspect of his duties as Seed Program Director by Ronnie Murphy, Lance Hester, Doug Rigney and Ron Sparks.

9. As the State Seed Program Director Plaintiff's job was to enforce the Truth in Labeling Law as it relates to the seed industry.

10. Plaintiff's regulatory and administrative duties were gradually being taken away and given to Agriculture Compliance in violation of State codes.

11. On or about April 2002, Ronnie Murphy met briefly with Plaintiff and the laboratory staff to inquire about the backlog of samples and why it was taking so long getting the test results to the clients. Mr. Murphy was informed that these problems were occurring, because of severe staff shortage due to attrition, and every request to hire needed staff being denied.

12. On or about May 2002, the three Seed Analyst and Plaintiff volunteered to work two to three hours after regular work hours to

catch up the backlog of samples, which took five months to accomplish. Plaintiff was not recognized for the tremendous and unselfish sacrifice.

13. On or about September 2002, Ronnie Murphy asked Donny Walker to query the Seed Program data base to further scrutinize Plaintiff's work, looking for faults and criticisms. Not only did the staff and Plaintiff keep up with the workload, the query revealed that they had established a record turn around time on the test results.

14. On or about April 30, 2003, Plaintiff applied for the position of Division Director, and was ranked number 4 out of 8. The two individuals ranked 2 and 3 did not have a master's degree, which Plaintiff did, or the years of experience that Plaintiff had. The position was awarded to Lester Hester. Mr. Hester was less qualified than Plaintiff. Plaintiff was discriminated against when he was denied this promotion based on his race.

15. On or about October 4, 2004, Plaintiff was summoned to the commissioner's office at about 3:45 p.m. Upon arrival, the secretary requested that Plaintiff have a seat because, Mr. Sparks wasn't ready to see him. After a fifteen to twenty minute wait, Plaintiff was finally ushered into the commissioner's office. Unaware of the purpose or reason for being summoned, Plaintiff was a bit startled as he entered the office and saw several people sitting around a conference table. In attendance were Ron Sparks, Doug Rigney,

      Ronnie Murphy, Lance Hester, David Hooks, B.J. Russell and Dana Wallace. Mr. Sparks asked Plaintiff to take a seat and the commissioner informed Plaintiff that he was summoned to his office for the purpose of issuing him a letter of reprimand for failing to perform his job properly.

16. Plaintiff was asked if he had anything to say in his defense. As one can imagine, after having been blind sided in such an underhanded way, Plaintiff was at a lost for words. Plaintiff informed him that the work was being done in as orderly and timely manner as possible under the circumstances. Plaintiff was being harassed by Mr. Sparks.

17. On or about October 7, 2004, Mr. Sparks sent a letter to Alabama Seed Industry and to Plaintiff's counterparts, both state and federal, informing them that he was taking over the day to day operations of Alabama's program and that any communication with the seed laboratory was to be directed explicitly to him, Doug Rigney, or Lance Hester. This was another step in usurping Plaintiff's responsibilities and authority.

18. In or around April 2005, the Governor sent out a mandate that all unnecessary vehicles were to be taken from employees. The Defendant removed vehicles from its program directors and other management employees. The vehicles were eventually redistributed. However, Plaintiff and no other blacks were given

their cars back. However, after persistent requests, George Parrish, black employee, was eventually given his vehicle back. Some of the similarly situated whites were Benny Hitch and Lance Hester. Plaintiff was discriminated against based on his race.

19. During June of 2006, Plaintiff complained to the Alabama State Employees Association (A.S.E.A.) that he, as well as other Blacks was being subjected to unlawful employment discrimination because of their race due to disparate treatment with cars, promotions and other matters.

20. Immediately after the Plaintiff complained to the A.S.E.A., the Defendant began retaliating against Plaintiff.

21. On or about June 29, 2006, Plaintiff returned from lunch and parked on the north side of the building next to the coliseum parking lot. As Plaintiff walked across the parking lot toward the covered walkway, Plaintiff noticed Jimmy Holley getting out of the passenger side of the Commissioner's vehicle. As Plaintiff approached the vehicle, Plaintiff noticed Mr. Sparks getting out of the driver's side. (This parking space is next to and to the right of the entrance to the covered walkway.) As Plaintiff walked pass the two gentlemen (within two feet) Plaintiff spoke, "How are you all doing? " They did not respond. Plaintiff proceeded toward the building. Approximately four to five paces beyond them, Plaintiff heard Mr. Sparks yell, but the voice tone and quality was not that of a salutation. As Plaintiff

continued up the walkway, Mr. Sparks said, "John, I said hi." Plaintiff stopped, turned around to face them as they were walking toward him. Plaintiff replied, "I spoke to you all, did you not hear me speak to you?" By that time Mr. Holley and Mr. Sparks had caught up to Plaintiff on the walkway. Mr. Sparks in a loud voice yelled, "I was just trying to be nice to you, I don't understand why you are so rude and hateful toward me." Plaintiff's reply to him was, "commissioner, I spoke to you and you spoke to me, so let's just let it be at that."

22. At that point, Plaintiff was still a step or two ahead of the two of them, and near the door to the lobby of the auditorium. As Plaintiff opened the door and stepped inside, Mr. Sparks made a remark that Plaintiff viewed as sarcastic, derogatory and harassing, "You people or you all," Plaintiff turned to look Mr. Sparks in the face; to indicate that he was aware of the derogatory nature of his remark and that it was not appreciated. Mr. Sparks and Plaintiff were face to face at this point. As Mr. Sparks stepped in side the door he made the statement "John are you threatening me? I'll have your ass arrested." Plaintiff's reply was, "Commissioner, do what you have to do." Plaintiff then turned around and proceeded up a set of steps to a card activated security door to avoid any further confrontation with the two of them.

23. As Plaintiff gained access to the secured area, Mr. Sparks yelled, "John, I want to see you in my office in 10 minutes!" Mr. Sparks immediately changed that from 10 minutes to "right now!" Plaintiff's reply was that he needed to go to his office to contact his A.S.E.A. representative. Mr. Sparks repeated his last statement and Plaintiff complied with his demand.

24. Plaintiff followed Mr. Sparks and Mr. Holley into Mr. Sparks' office and sat in a chair in front of Mr. Sparks' desk. Plaintiff summoned Jeff Webb, an attorney for the department, to his office. Mr. Webb came in and took a seat next to Plaintiff. Mr. Sparks proceeded to tell Mr. Webb his version of the incident that had just taken place between he and Plaintiff. Without hearing Plaintiff's view, Mr. Webb's comment was "we can't have that in the workplace." Plaintiff was dismissed and Plaintiff went to his office and called the A.S.E.A. office and gave his version of the incident to Mr. Norbert Williams, attorney for A.S.E.A. Plaintiff was constantly being harassed by Mr. Sparks.

25. On or about July 2006, Plaintiff was reassigned from his position of seed director to a recently created position of Genetically Modified Plant and Products Director.

26. On or about July 31, 2006, at around 9:45 a.m., Ray Hilburn (Plaintiff's supervisor) came to Plaintiff's office and informed Plaintiff that he, Ronnie Murphy and Doug Rigney wanted to meet

with him in the upstairs board room at 10:30 a.m. Plaintiff arrived for the meeting at 10:25. No one was in the room. Around 10:40, Mr. Murphy came in for a few minutes and left. Around 10:50, Mr. Murphy returned to the room followed by Mr. Hilburn five minutes later. Mr. Murphy informed the group that Mr. Rigney would not be attending the meeting.

27. Mr. Murphy informed Plaintiff as to why he was summoned to this meeting. Mr. Hilburn gave Plaintiff a letter. The letter stated that Plaintiff's duties and immediate supervisor were being changed. It should be noted that this letter was not signed. Plaintiff was also given a Form 40 to sign. Plaintiff felt that he was being targeted for disparate treatment and continued discrimination and harassment because of his participation in statutorily protected activity.

28. Plaintiff expressed his lack of interest in this newly created position. Plaintiff had grave reservations and misgivings regarding this position. Defendant claimed that the state so badly needed this position, yet didn't see the need to publicly announce the job so as to have a larger selection of applicants to choose from. Additionally, there were other concerns. Plaintiff was especially concerned with the continual attempts by this administration to harass him, force him in a position to fail, leave or to retire. Plaintiff felt threatened that if he did not take this position he would be fired.

29. After voicing his position and concerns, Mr. Murphy attempted to convince Plaintiff of the importance of this program. Mr. Murphy further stated that Plaintiff was the only person in the Department qualified to handle these duties. Mr. Murphy further stated that the change in duties would be a lateral transfer without an increase in salary. Plaintiff's response to this was that if this program is so important, why wasn't announced so that other qualified applicants could apply. Normally statewide jobs are competitive. The transfer was actually a constructive demotion in retaliation for Plaintiff participating in statutorily protected activity.

30. At approximately 4:25 p.m., on this same day, Mr. Murphy came to Plaintiff's office. Plaintiff was on the phone, Mr. Murphy left and returned about fifteen minutes later. Plaintiff was still busy with phone calls. At 4:55 Plaintiff was finally finished with his phone calls when Mr. Murphy came back to Plaintiff's office to tell him that the Commissioner wanted to see Mr. Murphy and Plaintiff in his office. Plaintiff informed Mr. Murphy that he had a 5:15 appointment.

31. Plaintiff left and returned with Mr. Sparks about five minutes later. Mr. Sparks informed Plaintiff that he wanted to talk with him about this very important program that was so badly needed in Alabama. He stated that Monsanto and Syngena thinks that there is a great need for such a program. Plaintiff repeated his concerns, reservations and lack of interest in the new position.

32. Plaintiff further stated that his counterparts (State Seed Control Officials) in other states have "Genetic Engineering" as it relates to the seed industry as part of their regular duties. Plaintiff stated that he would gladly accept the added responsibilities as they relate to seed only, but he wanted to keep his position as State Seed Program Director. Mr. Sparks denied Plaintiff's request.

33. Mr. Sparks said among other things that he desired that Plaintiff take the job, if not "We will have to part company." Once again, Plaintiff was being harassed, threatened and retaliated against.

34. On or about August 1, 2006, at about 11:45, Mr. Murphy came to Plaintiff's office and informed him that Plaintiff was to cease and desist all of his activities and duties as the State Seed Program Director immediately and vacate the office by 5:00 p.m. Friday, August 4, 2006.

35. Plaintiff was reassigned to an office with no chair. This was another attempt by Defendant to embarrass, harass, intimidate and retaliate against Plaintiff.

36. Plaintiff was the first black to hold the position of Seed Program Director. Plaintiff's position was awarded to a less qualified white following Plaintiff's reassignment. Plaintiff's position was reorganized and placed under Benny Hitch, program director for Agriculture Compliance. Plaintiff was discriminated against based on his race.

37. On or about September 27, 2006, Plaintiff filed a racial discrimination and retaliation charge against Mr. Ron Sparks and Alabama Department of Agriculture and Industries with the Equal Employment Opportunity Commission (EEOC).

38. The Plaintiff is of the belief and provides evidence that he has been discriminated against in violation of Title VII of the 1964 Civil Rights Act, as amended based on race and in retaliation to his complaint of the discriminatory treatment of blacks in the workplace and with A.S.E.A..

## COUNT ONE

## RACE DISCRIMINATION – TITLE VII

39. Plaintiff adopts, realleges and incorporates by reference paragraphs one through forty-one above, the same as if more fully set herein, and further alleges anew.

40. In taking the above described actions, Defendant intentionally discriminated against Plaintiff on April 30, 2003, April 2005 and July 2006, on the basis of his race.

41. As a proximate consequence of the violations of Title VII based on race by Defendant, Plaintiff has suffered and will continue to suffer damage to his professional life and current and future career opportunities. Further, Plaintiff has suffered future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life and non-pecuniary damages.

## COUNT TWO

## RETALIATION

42. Plaintiff adopts, realleges and incorporates by reference paragraphs one through forty-four above, the same as if more fully set herein, and further alleges anew.

43. In taking the above described actions, Defendant retaliated against Plaintiff, when he filed a complaint with the State Employee Association in June 2006, against Defendant.

44. As a direct result of the ongoing retaliation against Plaintiff, Plaintiff's constitutional rights have been abridged.

45. As a proximate cause of the Defendant's actions, Plaintiff has been injured and damaged, as set forth in paragraphs above.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Honorable Court grant the following:

    a.    Assume jurisdiction over this action;

    b.    A judgment declaring that Defendant violated 28 U.S.C. Sec. 1331, 42 U.S.C. Sec. 2000(e), et seq. and Retaliation;

    c.    All back-pay and fringe benefits as a result of the discrimination and retaliation, with interest;

    d.    Attorney's fees;

e. Costs;

f. Prejudgment interest;

g. An award of such compensatory damages for any loss of wages, and loss of benefits, including, but not limited to, retirement pension benefits, mental anguish, emotional distress, and embarrassment, both past, present and future to which Plaintiff may be entitled; and such further, other and different legal or equitable relief as the Court may deem appropriate or which she may be entitled, and

h. Punitive damages.

Respectfully submitted,

_____
Juraldine Battle-Hodge (BAT033)
Attorney for the Plaintiff
207 Montgomery Street, Suite 215
Montgomery, Alabama 36104

## **CERTIFICATE OF SERVICE**

      We, hereby certify that, on the 17th day of March 2008, the foregoing document was served upon the following counsel of record by placing a copy of the same in the U.S. Mail, First Class postage prepaid, addressed as follows:

**Hon. E. Ham Wilson, Jr.**
**Hon. Emily C. Marks**
**Ball, Ball, Mathews & Novak, P.A.**
**P.O. Box 2148**
**Montgomery, Alabama 36102-2148**

_____
OF COUNSEL

15