**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JOHN L. CRAYTON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:    2:07-cv-626-MEF** |
| | ) | |
| **ALABAMA DEPARTMENT OF** | ) | **(LEAD CASE)** |
| **AGRICULTURE & INDUSTRIES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | | |
|---|---|---|
| **JOHN L. CRAYTON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:    2:07-cv-1111-MEF** |
| | ) | |
| **ALABAMA DEPARTMENT OF** | ) | **(MEMBER CASE)** |
| **AGRICULTURE & INDUSTRIES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**COMES NOW,** the defendant Alabama Department of Agriculture & Industries, and submits this Brief in Support of the Motion for Summary Judgment contemporaneously filed herein, and states as follows:

## I. **Introduction**

This is an action for relief under 42 U.S.C. §2000e, et seq., (Title VII). The plaintiff is employed by the Defendant, Alabama Department of Agriculture as Program Director of the Genetically Modified Plant Program. He alleges that the defendant discriminated against him on the basis of his race, and retaliated against him.

The plaintiff makes numerous, disjointed allegations of discrimination, the earliest of which allegedly occurred in 2002. Notably, the plaintiff only raised the majority of his factual allegations for the first time in his judicial complaints. Of great significance is the absence of any evidence that the alleged conduct complained of by the defendant was based on his race or resulted in tangible employment action. The plaintiff's claims arise out of his seeming unwillingness to get along with most of his supervisors and co-workers and his dislike of supervisory oversight of his work.

## II.  Statement of Undisputed Facts

The plaintiff, John Crayton, was hired with the Alabama Department of Agriculture in May 1976 as a seed analyst. (Crayton depo. p. 13, l. 2-5). Plaintiff stayed in the position of seed analyst for twenty-five years, at which time he was promoted to Program Director of the Seed Program. (Crayton depo. p. 13, l. 12-17). Plaintiff is still a Program Director. (Crayton depo. p. 13, l. 20-21). As Program Director of the Seed Lab, the plaintiff's duties included enforcement of the Truth in Labeling Law as it relates to the seed industry. (Crayton depo. p. 24, l. 18-22). Before seeds are sold in interstate or intrastate commerce, they must be tested by a lab and labeled. (Crayton depo. p. 26, l. 4-11; p. 27, l. 2-7). It is important that seed samples be tested promptly and results be timely given to seed suppliers or farmers. (Crayton depo. p. 27, l. 8-12). Seed sold in Alabama must carry a claim as to its purity and quality. (Crayton depo. p. 31, l. 13-21).

The plaintiff complains that in 2002, his work was scrutinized by his superiors and claims the inquiries into his job performance constituted race discrimination. (Doc. 13; Crayton depo. p. 23, l. 18 to p. 24, l. 17). It is undisputed that this scrutiny did not result in any tangible employment action or affected his ability to perform his job functions.

The plaintiff claims that in April 2003, he applied for a position as Division Director with the Department of Agriculture. (Crayton depo. p. 34, l. 8-14). The job opening was announced by the Alabama State Personnel Department, which established a register for the position[1]. (Crayton depo. p. 34, l. 14-19). The plaintiff ranked 4 out of 8 applicants on the register for the position of Division Director by the State Personnel Department. (Crayton depo. p. 34, l. 22 to p. 35, l. 1). The position was awarded to Lance Hester, a white male, who was ranked higher on the register than the plaintiff. (Crayton depo. p. 35, l. 2-18). The plaintiff claims that his ranking on the register by the State Personnel Department was "racially controlled" and influenced by the Commissioner of the Department of Agriculture. (Crayton depo. p. 35, l. 22 to p. 36, l. 9). However, the plaintiff has no knowledge of or evidence that the Commissioner had any influence at all about the plaintiff's ranking on the register for the position of Division Director. (Crayton depo. p. 36, l. 20 to p. 37, l. 1). When the plaintiff learned that the position of Division Director was filled by Lance Hester, he did not make any complaints about it to anyone at the Department of Agriculture. (Crayton depo. p. 38, l. 2-6).

On October 4, 2004, the plaintiff was summoned to the Commissioner's office for a meeting with several people wherein he was informed that he was receiving a written reprimand for failing to properly perform his job responsibilities. (Crayton depo. p. 38, l. 7-16; Written reprimand dated October 4, 2004). The reprimand resulted after a series of complaints were received by the Department of Agriculture about the poor work performed in the Seed Lab while the plaintiff was the Program Director. (Crayton depo. p. 38, l. 21 to p. 39, l. 20; Affidavit of Lance Hester; Complaints dated September 21, 2004, September 30, 2004 and October 4, 2004).

---

[1] In order to be considered for some positions with the State of Alabama, an individual must be on the employment register with the Personnel Department. An applicant must meet the basic job requirements for a position to be placed on the register. Applicants are then ranked by the Personnel Department for a particular position, and the rankings are sent to the state agency with the job opening for the ultimate hiring decision.

The clients of the Seed Lab complained that they were having problems receiving their test results back from the lab in a timely manner. (Crayton depo. p. 39, l. 6-20). It is necessary that the Seed Lab get test results back to clients as quickly as possible. (Crayton depo. p. 39, l. 21 to p. 40, l. 2). These complaints were cause for great concern because farmers and agricultural businesses were adversely affected. (Affidavit of Lance Hester). Further, the Department of Agriculture is a state agency and values its reputation in the agriculture community both in and out of the State of Alabama. (Affidavit of Lance Hester). It is therefore, imperative that the Seed Lab perform its duties in professional and timely manner so as to retain its position as a leader in the agriculture industry. (Affidavit of Lance Hester).

Although the plaintiff claims that the reprimand was a form of harassment, the purpose of the reprimand was to facilitate a correction and address the problems that had been reported. (Crayton depo. p. 46, l. 3-18; p. 48, l. 21 to 49, l. 1; Affidavit of Lance Hester; Reprimand dated October 4, 2004). This is the only reprimand the plaintiff has received. (Crayton depo. p. 121, l. 9-15). The plaintiff's pay was not reduced nor did he lose any benefits as a result of the reprimand. (Affidavit of Lance Hester).

On or about October 4, 2004, after having received numerous complaints about the Seed Lab, the Commissioner sent out a memorandum to the Alabama Seed Industry informing them that he was providing oversight over the Seed Lab and communication should be directed to him, Deputy Commissioner Doug Rigney or Division Director Lance Hester. (Crayton depo. p. 50, l. 10-19; Memorandum dated October 4, 2004). The plaintiff claims that this was done in an effort to usurp his responsibilities and authority. (Crayton depo. p. 50, l. 19-22).

When plaintiff was first promoted to Program Director, his supervisor was Wilma Fitzpatrick, a black female. (Crayton depo. p. 14, l. 17-23; p. 15, l. 10-11). In approximately

2005, plaintiff's supervisors became Division Director Lance Hester and Deputy Commissioner Doug Rigney. (Crayton depo. p. 15, l. 12 to p. 16, l. 3). His supervisor is currently Deputy Commissioner Ronnie Murphy. (Crayton depo. p. 98, l. 16-19). Plaintiff was asked to become a certified seed specialist after he became Program Director of the Seed Lab, but he refused because he did not see the point. (Crayton depo. p. 30, l. 23 to p. 31, l. 2).

Plaintiff was assigned a state vehicle in approximately 2004. (Crayton depo. p. 16, l. 4-20). However, he rarely traveled and primarily used the car to go and come home from work. (Crayton depo. p. 17, l. 7-17). Although his job responsibilities called for him to travel across the state to visit with inspectors, he never did it. (Crayton depo. p. 21, l. 13-17). The Governor of Alabama thereafter issued a mandate restricting the issuance of state vehicles to state employees because of a budget crunch. (Crayton depo. p. 17, l. 18 to p. 18, l. 8). The plaintiff and other employees at the Department of Agriculture, both black and white, lost their state vehicles because of the Governor's mandate. (Crayton depo. p. 19, l. 2-7). The plaintiff never requested that he be allowed to keep his state vehicle. (Crayton depo. p. 18, l. 21 to p. 19, l. 1). If plaintiff ever needed the use of a state vehicle to travel for work, he could have used a vehicle from the state motor pool. (Crayton depo. p. 21, l. 18-22).

On May 11, 2005, Lance Hester issued a written warning to the plaintiff for failing to follow rules and directives regarding leave time requests, delivery of seed samples in the lab, and proper purchasing procedures. (Crayton depo. p. 118, l. 10-14; p. 119, l. 1-4; Written Warning dated May 11, 2005). The plaintiff perceives that the incidents delineated in the Written Warning constitute race discrimination. (Crayton depo. p. 119, l. 5-9).

In June 2006, the plaintiff and a few other black Department of Agriculture employees went to the Alabama State Employees Association (ASEA) to complain about what they viewed

as racial conditions in the Department of Agriculture. (Crayton depo. p. 19, l. 15-17). They complained that state vehicles were reissued in 2005 to white employees but not to them. (Crayton depo. p. 19, l. 18 to p. 20, l. 1). Although the plaintiff claims he noticed white employees were reissued state vehicles, he cannot identify any. (Crayton depo. p. 22, l. 8-12). The only black employees he thought should be reissued state cars were Wilma Fitzpatrick and him. (Crayton depo. p. 22, l. 13-16).

The plaintiff complains that in the seed lab, his database was queried and his decisions in the seed lab were scrutinized. (Crayton depo. p. 24, l. 2-8). Although he claims this was a form of harassment or discrimination, the plaintiff acknowledges that this oversight did not affect his ability to do his job. (Crayton depo. p. 27, l. 16-23).

In late June, 2006, the plaintiff had an encounter with the Commissioner in the parking lot at the Department of Agriculture. (Crayton depo. p. 66, l. 4 to p. 71, l. 10). The plaintiff claims that he saw the Commissioner and another Department of Agriculture employee, Jimmy Holley, in the parking lot as he was returning to work from lunch. (Crayton depo. p. 66, l. 14 to p. 67, l. 8). The plaintiff claims that as he passed the Commissioner, he spoke a greeting and kept walking. (Crayton depo. p. 67, l. 22 to p. 68, l. 8). The Commissioner spoke to the plaintiff and asked how he was doing; the plaintiff ignored him. (Crayton depo. p. 68, l. 17-22). The Commissioner spoke again and the plaintiff replied that they had both spoken, to just let it be at that. (Crayton depo. p. 69, l. 21-23). According to the plaintiff, the Commissioner made a sarcastic remark and the plaintiff turned around and looked him in the face. (Crayton depo. p. 70, l. 2-5). The Commissioner was offended by the plaintiff's behavior. (Crayton depo. p. 70, l. 5-7). The Commissioner called the plaintiff to his office, along with Department of Agriculture attorney Jeff Webb to discuss the situation. (Crayton depo. p. 77, l. 7-23). The plaintiff did not

say anything during the meeting. (Crayton depo. p. 78, l. 1-7). Jimmy Holley witnessed the interaction between the plaintiff and Commissioner and verified the Commissioner's version of events regarding the plaintiff's inappropriate behavior. (Crayton depo. p. 77, l. 13-19). After he left the Commissioner's office, the plaintiff contacted the ASEA about the matter. (Crayton depo. p. 86, l. 20 to p. 87, l. 7). The plaintiff received no reprimand, reduction in pay or reduction in benefits as a result of his behavior toward the Commissioner. (Crayton depo. p. 87, l. 16 to p. 88, l. 2).

The Department of Agriculture, aware of the emerging and growing field of genetically modified plants, starting looking into the development of a Genetically Modified Plant Program in 2005. (Affidavit of Lance Hester). This program actually got underway in 2006. (Affidavit of Lance Hester). In July 2006, the plaintiff was assigned to a new position as Program Director of the Genetically Modified Plant Program. (Crayton depo. p. 20, l. 12-16; Affidavit of Lance Hester; Letter to Crayton dated July 28, 2006). The plaintiff's educational background and experience in the Seed Lab made him suitable for this position. (Affidavit of Lance Hester).

The plaintiff's duties and responsibilities changed with this new position, and he was assigned a state vehicle. (Crayton depo. p. 20, l. 12-20; p. 102, l. 17-21). Although the plaintiff is satisfied to have a state vehicle, he would have been just as satisfied without one. (Crayton depo. p. 102, l. 22 to p. 103, l. 8). He has only traveled three times in two years, and only just to Auburn. (Crayton depo. p. 104, l. 22 to p. 105, l. 10). He also received a 5% across the board raise in September, 2006, after his reassignment. (Crayton depo. p. 103, l. 9-12).

Plaintiff claims Commissioner Ron Sparks, Deputy Commissioner Ronnie Murphy, Division Director Doug Rigney, and Division Director Lance Hester wanted him out of the position of Program Director of the Seed Lab because of his race. (Crayton depo. p. 33, l. 15 to

p. 34, l. 6; p. 106, l. 13-17).  He bases this assumption on "the historical aspect of racism and how blacks have been discriminated against over the years."  (Crayton depo. p. 106, l. 13-22). However, no one has asked him to retire.  (Crayton depo. p. 109, l. 10 to p. 110, l. 14).  He further claims that he was penalized in his transfer because he was not offered any monetary enticements to take the job.  (Crayton depo. p. 108, l. 12-19).

The plaintiff further claims that he was subjected to harassment because when he was transferred, he was assigned to an office without a chair.  (Crayton depo. p. 110, l. 15 to p. 111, l. 4).  However, the plaintiff acknowledges that he brought his old office furniture with him to his new office, including a desk and a chair.  (Crayton depo. p. 111, l. 5-13).

The plaintiff's reassignment to the position of Program Director of the Genetically Modified Plant Program was a lateral transfer.  (Crayton depo. p. 100, l. 14-16).  There was no reduction in his pay with the transfer.  (Crayton depo. p. 100, l. 10-13; p.107, l. 23 to p. 108, l. 2).  Genetic engineering is a new and emerging discipline.  (Crayton depo. p. 95, l. 8-13). Although the plaintiff claims his abilities and expertise limit him in the ability to establish the Genetically Modified Plant Program, he has been asked to attend seminars and educational programs to increase his expertise in that area.  (Crayton depo. p. 97, l. 18 to p. 98, l. 5).  Since he became the program director, he has only made one travel request for further education. (Crayton depo. p. 98, l. 1-11).  His supervisor, Ronnie Murphy, told him to go ahead and make travel arrangements pursuant to his request.  (Crayton depo. p. 98, l. 22 to p. 99, l. 9).

The plaintiff alleges that he did not want to accept the position as Program Director of the Genetically Modified Plant Program because he had reservations regarding his qualifications and abilities.  (Crayton depo. p. 95, l. 4-11; p. 112, l. 7-24).  Commissioner Sparks told the plaintiff the only reason he would not succeed in the position is that he would fail to ask for the things he

needed.  (Crayton depo. p. 113, l. 1-5).  The next week, the plaintiff submitted a list of things he needed to do his job, including the following:  to be returned to his previous position, office supplies, computers, an assistant and a secretary.  (Crayton depo. p. 113, l. 6 to p. 114, l. 7).  He received the computer, office supplies, equipment and furniture he needs.  (Crayton depo. p. 114, l. 1-16).  The plaintiff only sent that one request for things he needs to do his job.  (Crayton depo. p. 115, l. 12-14).

The position held by the plaintiff can be useful to the Department of Agriculture and the State of Alabama.  (Crayton depo. p. 122, l. 12-20).  The plaintiff is one of the most qualified people in the Department of Agriculture to run the Genetically Modified Plant Program.  (Crayton depo. p. 123, l. 5-12).  With this transfer, the plaintiff received a state vehicle, all his merit raises, was given the opportunity to travel and meet the industry, attend workshops, conventions and meetings.  (Crayton depo. p. 123, l. 13-22).  The Genetically Modified Plant Program is becoming more critical and is where the industry is headed.  (Crayton depo. p. 124, l. 21 to p. 125, l. 2).  The plant industry is constantly trying to improve the quality of seed, the type of seed, and thus, the crops for disease resistance.  (Crayton depo. p. 125, l. 3-10).  This work will benefit farmers in the State of Alabama.  (Crayton depo. p. 125, l. 15-19).  The plaintiff has spent the last year and half to two years reading and doing research on his own during the course of his job.  (Crayton depo. p. 126, l. 15 to p. 127, l. 1).  The plaintiff acknowledges that when he was named Program Director for the Genetically Modified Plant Program, he may have been told it was a good opportunity for him and to develop this program for the State of Alabama.  (Crayton depo. p. 169, l. 21 to p. 170, l. 3).

Upon Mr. Crayton's reassignment to the position of Program Director of the Genetically Modified Plant Program, his previous duties as Program Director of the Seed Lab were assigned to Andrae McMillan, a black male, who is a certified seed analyst.  (Affidavit of Lance Hester).

The plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on September 27, 2006 making claims of race discrimination and retaliation in violation of Title VII.   (Crayton depo. p. 119, l. 19-22; EEOC Charge of Discrimination dated September 27, 2006).   The text of the plaintiff's EEOC Charge of Discrimination is as follows:

> I began my employment with the employer named above as a seed analyst on May 19, 1976.  Upon Mr. Lance Hester becoming my supervisor, I began to be subjected to adverse terms and conditions of employment in my position of seed program director.  Mr. Hester constantly challenged decisions that I made regarding a particular product although he had no expertise in the area to which I was assigned.   The position of seed director was considered to be very influential and one would come in contact with people who had power.  During June of 2006, I complained to the Alabama State Employees Association that I, as well as other Blacks were being subjected to unlawful employment discrimination because of our race.  On July 28, 1006 (sic), I was reassigned from my position of seed program director to a recently created position of genetically modified plant and plants products director.  I was the first Black to hold the position of seed program director and the position was awarded to a lesser qualified White following my reassignment.   I believe that I was discriminated against in violation of Title VII of the 1964 Civil Rights Act, as amended because of my race, Black and in retaliation to my complaint of unlawful employment discrimination.

(EEOC Charge of Discrimination dated September 27, 2006).  The plaintiff subsequently filed the present lawsuit against the defendant alleging race discrimination and retaliation.  (Doc. 1).

On or about November 14, 2006, Ronnie Murphy met with the plaintiff and mandated that the plaintiff contact the Employee's Assistance Program (EAP).  (Crayton depo. p. 133, l. 1-8; p. 174, l. 9-14; Referral to EAP dated November 14, 2006).  This mandate arose out of an

incident the plaintiff had with another Department of Agriculture employee, Reba Stabler. (Crayton depo. p. 133, l. 9 to p. 134, l. 3). The plaintiff was walking into the office building one morning, and his hands were full. (Crayton depo. p. 134, l. 15-18). The plaintiff had his key out to unlock the door and claims the door flew back in his face. (Crayton depo. p. 134, l. 17-23). Ms. Stabler said she pushed the door back to help him. (Crayton depo. p. 135, l. 1-4). The plaintiff was annoyed that Ms. Stabler pushed the door open for him, even though she said she was trying to help him. (Crayton depo. p. 136, l. 1-6). The plaintiff told Ms. Stabler to go ahead, he would let himself in and claims she "insisted on having this dialogue with" him. (Crayton depo. p. 136, l. 9-12). The plaintiff responded that he did not appreciate her pushing the door out in his face. (Crayton depo. p. 136, l. 13-15). Ms. Stabler complained to her supervisor about the plaintiff's inappropriate behavior. (Crayton depo. p. 133, l. 10-18). The plaintiff has generally removed himself from social situations at work; he mainly keeps to himself and does not associate with many people at work. (Crayton depo. p. 137, l. 3-12). The plaintiff further made a comment to his supervisor, Ronnie Murphy, that he and the Commissioner were klansmen without hoods, which along with his inappropriate behavior toward Ms. Stabler, contributed to his referral to the EAP. (Crayton depo. p. 167, l. 18-23; p. 173, l. 1-18; 174, l. 5-11).

The plaintiff saw a psychiatrist, Clinton Smith, on December 5, 2006 after referral by the EAP. (Crayton depo. p. 145, l. 2-8; p. 175, l. 4-7). The plaintiff was referred to a Behavioral Health System psychiatrist by the EAP, not Ronnie Murphy or the Department of Agriculture. (Crayton depo. p. 175, l. 4-10; p. 176, l. 1-23). The EAP is a part of the plaintiff's state benefits. (Crayton depo. p. 175, l. 11-14). Based on what the plaintiff told Dr. Smith, the doctor concluded that there appeared to be a personal vendetta between the plaintiff, Ronnie Murphy and Commissioner Sparks. (Crayton depo. p. 148, l. 3-8). Dr. Smith did not speak with anyone

else at the Department of Agriculture. (Crayton depo. p. 148, l. 9-16). The plaintiff did not receive a demotion or reduction in benefits as a result of the referral to the Behavioral Health System. (Crayton depo. p. 148, l. 17 to p. 149, l. 2). Dr. Smith's report specified that he found "an interpersonal problem with Mr. Crayton and his supervisor, Ronnie Murphy, and Commissioner Sparks." (Crayton depo. p. 151, l. 11-14; Dr. Smith Report dated December 5, 2006). Dr. Smith further noted that "Mr. Crayton refused to sign the supervisory referral authorization form," and the plaintiff never signed it. (Crayton depo. p. 151, l. 16-22; Dr. Smith Report dated December 5, 2006).

After the plaintiff saw Dr. Smith, he filed a second EEOC Charge of Discrimination. (Crayton depo. p. 152, l. 12-15; EEOC Charge of Discrimination dated May 3, 2007). The plaintiff filed a second Charge of Discrimination with the EEOC on May 3, 2007. (Crayton depo. p. 127, l. 11-14). The text of the plaintiff's second EEOC Charge of Discrimination is as follows:

> I am Black and I was hired by the above named employer on May 19, 1976, as a seed analysis (sic) and I was eventually promoted to seed program director. On July 28, 2006, I was demoted to the position of genetically modified plant and plants product director, which I protested. On September 27, 2006, I filed charge 420-2006005216 because of my demotion and reassignment to another job. On November 30, 2006, my supervisor had me to enroll in an employee assistance program, which I protested. I had a schedule (sic) job performance review that should have been completed no later than April 30, 2007. Any pay raise that I would have received is based on my job performance review being completed in a timely manner, which has not occurred. On May 2, 2007, I learned from personnel that my supervisor should have completed and submitted my annual job performance review as required by April 30, 2007, so that I would be eligible for a merit pay raise. I believe I am being discriminated against because of my race, Black and in retaliation for having filed a previous charge in violation of Title VII of the Civil Rights Act of 1964, as amended.

(EEOC Charge of Discrimination dated May 3, 2007). The EEOC investigated the claim and informed the plaintiff that it did not find any violation of the law, the same finding as to his first EEOC Charge of Discrimination. (Crayton depo. p. 153, l. 12-16).

The plaintiff filed a second lawsuit against the defendant alleging retaliation; this second lawsuit was consolidated with the present case. (Doc. 15). The basis of the second EEOC Charge of Discrimination and lawsuit was the referral to Behavioral Health Services by the EAP and a delay in the completion of his annual review. (Crayton depo. p. 155, l. 3-17; p. 171, l. 11-18). The plaintiff claims that his annual review should have been completed by April 30, 2007, but it was not completed until May, 2007. (Crayton depo. p. 155, l. 19 to p. 156, l. 10). This delay did not result in a reduction in pay, demotion, or loss of a raise. (Crayton depo. p. 156, l. 11-23). The plaintiff simply complains that the delay in completion of his annual evaluation created a chance he would not receive a raise. (Crayton depo. p. 156, l. 22 to p. 157, l. 2). It is undisputed, however, that the plaintiff in fact received his raise so there was no retaliation. (Crayton depo. p. 157, l. 3-16).

The Department of Agriculture categorically denies it discriminated or retaliated against Mr. Crayton.

### III. <u>Summary Judgment Standard</u>

Rule 56(c), <u>Federal Rules of Civil Procedure</u>, provides that summary judgment is due to be entered in favor of the moving party if "there is no genuine issue as to any material fact." The moving party must first come forward with proof of the absence of genuine issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 321 (1986). The moving party may meet this burden by identifying portions of the pleadings, depositions, and answers to interrogatories, admissions or affidavits that demonstrate the absence of an issue of material fact. <u>Id.</u> at 323.

The burden then shifts to the non-moving party to present affirmative evidence that there is a genuine issue of material fact. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Any inferences to be drawn from the underlying facts should be viewed in a light most favorable to the non-moving party. Matsushita, 475 U.S. at 587. If the record as a whole "could not lead a rational trier of fact to find for the non-moving party there is no 'genuine issue for trial'." Id.

## IV. **Argument**

Plaintiff asserts Title VII claims for race discrimination and retaliation. All of plaintiff's claims are barred for his failure to timely satisfy the administrative prerequisites to suit except for the following: 1) claims of discrimination and retaliation arising out of plaintiff's lateral transfer, and 2) claim of retaliation arising out of his EAP referral to the Behavioral Health System.

### A.    Title VII Claims Untimely and Not Properly Raised in EEOC Complaint

Title VII makes it unlawful for an employer to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. 42 U.S.C. § 2000e-2(a)(1). In evaluating a Title VII claim, a Court must first examine the EEOC administrative charge and investigation to determine the scope of the judicial complaint. Robinson v. Regions Financial Corp., 242 F.Supp.2d 1070, 1079 (M.D. Ala. 2003), citing Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir. 1985). A plaintiff's judicial complaint under Title VII is limited to acts of discrimination contained in his EEOC charge. Coon v. Georgia Pacific Corp., 829 F.2d 1563, 1569 (11th Cir. 1987); Robinson, 242 F.Supp.2d at 1079 (citing Alexander v. Fulton County, 207 F.3d 1303, 1332 (11th Cir. 2000)). A judicial complaint

may also include matters "which can reasonably be expected to grow out of the charge of discrimination." Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n. 8 (11th Cir. 1994).

i.     Claims Not Mentioned in EEOC Complaints

Mr. Crayton makes two distinct claims of race discrimination and retaliation in his first EEOC complaint: 1) his supervisor, Lance Hester, challenged his work decisions, and 2) he was reassigned from Program Director of the Seed Lab to Program Director of the Genetically Modified Plant Program. Mr. Crayton makes three distinct claims of race discrimination and retaliation in his second EEOC complaint: 1) he was demoted to Program Director of the Seed Lab to Program Director of the Genetically Modified Plant Program (also raised in his first EEOC complaint), 2) he was referred to the Employee Assistance Program in retaliation for filing his first EEOC complaint, and 3) his annual performance review was not completed in a timely manner.

The plaintiff makes no mention in either of his EEOC complaints of the following claims made in his judicial complaints: 1) scrutiny of his work by supervisor Ronnie Murphy in 2002, 2) denial of promotion to division director in April 2003, 3) reprimand of October 4, 2004, 4) October 4, 2004 memorandum from the Commissioner to members of the Seed Industry allegedly usurping his duties[2], 5) failure to receive a state vehicle in 2005, 6) alleged retaliation and harassment by the Commissioner arising out of the June 2006 encounter in the parking lot, and 7) alleged harassment when he was reassigned to an office without a chair in August 2006.

Even though not specifically mentioned in plaintiff's EEOC charge, these claims are not reasonably related to charges mentioned in the file or ones which reasonably grew out of the existing charges. In Swanson v. Civil Air Patrol, 37 F.Supp.2d 1312 (M.D. Ala. 1998) the Court

---

[2] The plaintiff refers to this October 4, 2004 memorandum as a "letter" dated October 7, 2004 in his Complaints and deposition.

found plaintiff's claim of unequal pay was barred because it was not mentioned in her EEOC charges. Plaintiff's first EEOC charge made a claim for hostile environment, sexual harassment and retaliation. Her second EEOC charge specifically stated a claim for retaliation. This Court held that because neither of the plaintiff's charges mentioned disparate treatment on the basis of gender because of unequal pay, this Court could not find the claims to be like or related to claims of hostile environment sexual harassment or retaliation. Summary judgment was granted for the defendant on plaintiff's unequal pay claim.

In Robinson v. Regions Financial Corp., supra, the Court similarly examined whether plaintiff's Title VII claims which were not included in her EEOC charge could be included in plaintiff's judicial complaint. Plaintiff's EEOC charge alleged the denial of one promotion. Plaintiff's judicial complaint alleged, inter alia, four individual instances in which she was allegedly denied a promotion. These four instances were referred to by this Court as Claim A, Claim B, Claim C and Claim D. Three of those claims survived a Statute of Limitations defense, but only Claim B was included in the plaintiff's EEOC charge. The Court noted that while Claims C and D were the same as Claim B, in that they all involved the denial of a promotion, this Court held that Claims C and D were entirely new acts of discrimination never investigated by the EEOC. These claims arose after plaintiff filed her EEOC charge and were distinct from the claim that was the subject of the EEOC charge. As a result, the two later promotions could not reasonably have been expected to grow out of the plaintiff's original charge of discrimination. To the extent they were asserted under Title VII, the claims were barred.

Courts have found numerous other claims not specifically enumerated in an EEOC charge to be barred. Blalock v. Dale County Board of Ed., 84 F.Supp.2d 1291, 1301-1302 (M.D. Ala. 1991) (where plaintiff's EEOC charge only raised claims for gender-based disparate pay

16

and disparate treatment, claim for hostile work environment was separate and distinct and not reasonably related to other claims); Sweeney v. State of Alabama Alcoholic Beverage Control Bd., 94 F.Supp.2d 1241, 1267 (M.D. Ala. 2000), *vacated in non-relevant part and superseded in non-relevant part by* 117 F.Supp.2d 1266 (M.D. Ala. 2000) (where plaintiff's EEOC charge alleged defendant failed to reasonably accommodate plaintiff's alleged disability but did not contain an allegation regarding a hostile work environment based on race, sex or alleged disability, the claim was unrelated and, therefore, barred).

Tthe only claims that are common to both the EEOC complaints and the judicial complaints are 1) the plaintiff's reassignment from Program Director of the Seed Lab to Program Director of the Genetically Modified Plant Program in July 2006, and 2) referral to the EAP. Although Mr. Crayton made an allegation of retaliation for failure to timely complete his annual evaluation in his second EEOC complaint and his second judicial complaint, he has abandoned that claim. (Crayton depo. p. 155, l. 19 to p. 157, l.16).

To the extent that reference to the plaintiff's claims in his first judicial complaint of 1) scrutiny of his work by supervisor Ronnie Murphy in 2002, 2) denial of promotion to division director in April 2003, 3) reprimand of October 4, 2004, 4) October 4, 2004 Memorandum from the Commissioner to members of the Seed Industry allegedly usurping his duties, 5) failure to receive a state vehicle in 2005, 6) alleged retaliation and harassment by the Commissioner arising out of the June 2006 encounter in the parking lot, and 7) alleged harassment when he was reassigned to an office without a chair in August 2006 are not mentioned in his first EEOC charge, they are barred for failure of the plaintiff to file his charge within 180 days of the discriminatory act. The only claims of race discrimination or retaliation common to Mr. Crayton's two EEOC Charges of Discrimination and two judicial complaints are related to his

reassignment to Program Director of the Genetically Modified Seed Program, and his referral to the Behavioral Health System by the EAP.

      ii.    <u>Claims Are Time Barred</u>

To the extent that Mr. Crayton makes claims in his first judicial complaint for race discrimination or retaliation for events prior to March 31, 2006, they are barred for failure of the plaintiff to file his charge within 180 days of the alleged discriminatory act.  Mr. Crayton filed his first EEOC Charge of Discrimination on September 27, 2006.  This Court may only consider discrete acts that occurred between March 31, 2006 and September 27, 2006 (180 days before September 27, 2006).  42 USC § 2000 e – (5)(e)(1) (charge shall be filed within 180 days after the alleged unlawful employment practice occurred.)  Accordingly, any alleged discriminatory conduct that occurred prior to March 31, 2006 is time-barred.  Accordingly, to the extent that any of the following claims could be construed to have been included in his first EEOC complaint, plaintiff's allegations of 1) scrutiny of his work by supervisor Ronnie Murphy in 2002, 2) denial of promotion to division director in April 2003, 3) reprimand of October 4, 2004, 4) October 4, 2004 Memorandum from the Commissioner to members of the Seed Industry allegedly usurping his duties, 5) failure to receive a state vehicle in 2005, are time-barred.

Further, although plaintiff claims, in his first judicial complaint, that the alleged retaliation and discrimination were ongoing, in his first EEOC charge, in the box noted as "Dates Discrimination Took Place," the plaintiff only mentioned the time period of July 28, 2006 to September 26, 2006 and did not indicate that the discrimination or retaliation was ongoing. Accordingly, any alleged discrete acts of discrimination or retaliation mentioned in his first judicial complaint after September 27, 2006 are barred by his failure to fulfill the administrative prerequisites to filing suit under Title VII.

Based upon the above, the only claims in Mr. Crayton's judicial complaints that were timely raised in his EEOC charges relate to:  1) his reassignment to the position of Program Director for the Genetically Modified Plant Program, and 2) his referral to the Behavioral Health System by the EAP.

B.     Title VII Claims

Even if Plaintiff's claims were timely raised in his EEOC charge, plaintiff cannot establish a viable cause of action for discrimination or retaliation under Title VII.

i.     Race Discrimination

The plaintiff claims that he was discriminated against on the basis of her race but offers no direct evidence of race discrimination.  With respect to circumstantial claims of race discrimination under Title VII, the Eleventh Circuit held that:

> Title VII makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. Where direct evidence of discrimination is unavailable, a Title VII plaintiff may nonetheless present circumstantial evidence of discrimination sufficient to create a jury question. In reviewing Title VII claims that are supported by circumstantial evidence, we use the familiar McDonnell Douglas/Burdine three-step burden-shifting framework. Under this framework, the plaintiff shoulders the initial burden ... of establishing a *prima facie* case of racial discrimination.  Where direct evidence of discrimination is unavailable, a Title VII plaintiff may nonetheless present circumstantial evidence of discrimination sufficient to create a jury question. In reviewing Title VII claims that are supported by circumstantial evidence, we use the familiar McDonnell Douglas/Burdine three-step burden-shifting framework. Under this framework, the plaintiff shoulders the initial burden ... of establishing a *prima facie* case of racial discrimination.  If a *prima facie* case has been shown, then the defendant must articulate some legitimate, nondiscriminatory reason for the [adverse employment action]. If this is accomplished, the plaintiff may then attempt to demonstrate that the proffered reason was in fact merely a pretext for the defendant's actions.  The ultimate burden of persuading the

> trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. In deciding a motion by the defendant for judgment as a matter of law in a discrimination case where the defendant has offered nondiscriminatory reasons for its conduct, a court conducts a focused inquiry. The court must, considering all the evidence, ascertain whether the plaintiff has cast doubt on the defendant's proffered nondiscriminatory reasons sufficient to allow a reasonable factfinder to determine that the defendant's proffered legitimate reasons were not what actually motivated its conduct. The district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.

Silvera v. Orange County School Board, 244 F.3d 1253, 1258 (11th Cir. 2001)(internal citations and quotations omitted, ellipses in original).

The plaintiff seems to bring eight claims for discrimination in his two judicial complaints: 1) reassignment from his position as Program Director of the Seed Lab to Program Director of the Genetically Modified Plant Program, 2) scrutiny of his work by supervisor Ronnie Murphy in 2002, 3) denial of promotion to division director in April 2003, 4) reprimand of October 4, 2004, 5) October 4, 2004 Memorandum from the Commissioner to members of the Seed Industry allegedly usurping his duties, 6) failure to receive a state vehicle in 2005, 7) alleged harassment by the Commissioner arising out of the June 2006 encounter in the parking lot, and 8) alleged harassment when he was reassigned to an office without a chair in August 2006.

Importantly, the plaintiff's claims regarding alleged scrutiny of his work by supervisor Ronnie Murphy in 2002, denial of a promotion to division director in April 2003, reprimand of October 4, 2004, October 4, 2004 Memorandum from the Commissioner to members of the Seed Industry allegedly usurping his duties, failure to receive a state vehicle in 2005, alleged

harassment by the Commissioner arising out of the June 2006 encounter in the parking lot, and alleged harassment when he was reassigned to an office without a chair in August 2006 were not mentioned at all in his EEOC charges. Further, his claims of scrutiny of his work by supervisor Ronnie Murphy in 2002, denial of a promotion to division director in April 2003, reprimand of October 4, 2004, October 4, 2004 Memorandum from the Commissioner to members of the Seed Industry allegedly usurping his duties, and failure to receive a state vehicle in 2005 were not timely raised in plaintiff's EEOC complaint because they did not occur between March 31, 2006 and September 27, 2006.

a.      Hostile Work Environment

Even if these claims were timely raised, plaintiff cannot establish that the alleged conduct was discriminatory. The plaintiff apparently claims that he was harassed on the basis of his race when his work was scrutinized in 2002, when he received a reprimand in 2004 for poor work in the seed lab, when the Commissioner wrote a memorandum to the seed industry after plaintiff's reprimand assuring oversight over the seed lab, during his encounter with the Commissioner in the parking lot in June 2006, when he was reassigned to the position of Program Director of the Genetically Modified Plant Program, and when he allegedly was assigned to an office with no chair. (Doc. 13). The defendant construes these claims to be allegations of a hostile work environment.

The Eleventh Circuit held that "[a] hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, 277 F.3d 1269, 1275 (11th Cir. 2002)(internal quotations omitted). The court further held that:

> a plaintiff wishing to establish a hostile work environment claim
> [must] show: (1) that he belongs to a protected group; (2) that he
> has been subject to unwelcome harassment; (3) that the harassment
> must have been based on a protected characteristic of the
> employee, such as [race]; (4) that the harassment was sufficiently
> severe or pervasive to alter the terms and conditions of
> employment and create a discriminatorily abusive working
> environment; and (5) that the employer is responsible for such
> environment under either a theory of vicarious or of direct liability.

Id. The defendant acknowledges that the plaintiff is a member of a protected group. However,

the plaintiff cannot show that he was subjected to unwelcome harassment based on his race or

that any alleged conduct altered the terms and conditions of his job and created a discriminatorily

abusive working environment.

Under the law of this circuit, the following factors are considered in "evaluating the

objective severity of the harassment": "(1) the frequency of the conduct; (2) the severity of the

conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive

utterance; and (4) whether the conduct unreasonably interferes with the employee's job

performance." Id.

In Miller v. Kenworth of Dothan, supra., a Mexican-American plaintiff filed suit against

his former employer under § 1981 and Title VII claiming alleging he was subjected to a hostile

work environment because of his race. Shortly after the plaintiff became employed by the

defendant as a parts salesman, his co-employees nicknamed him "Julio," "Chico", and "Taco."

The plaintiff did not complain about the use of these nicknames. The shop foreman started

calling the plaintiff "Wetback," "Spic," and "Mexican Mother F-----." The plaintiff told the

foreman's supervisor to tell him to watch what he says. The foreman's supervisor was aware of

the name-calling but took no action. When another manager overheard an employee refer to the

plaintiff as "Julio" or "Taco", she reported it. The owner told the Director of Operations to

review the company's anti-discrimination policy with employees, including the foreman, at their safety meeting. After the meeting, all the co-workers stopped using nicknames except for the foreman who continued to refer to the plaintiff as "Wetback," "Spic," or "Mexican Mother F----" until the plaintiff was terminated a month later.

After his termination, the plaintiff filed suit against his former employer claiming he was subjected to a hostile work environment and his termination was retaliation for complaining about it. The defendant conceded that the plaintiff was in a protected group, the offensive comments were based on his protected status and were unwelcome. The defendant disputed that the harassment was severe or pervasive or that the employer was responsible therefor. In affirming the lower court's denial of the employer's Motion for Judgment as a Matter of Law, the Eleventh Circuit found that the foreman's name-calling was pervasive, three to four times daily, and that a reasonable jury could find the conduct severe because it was intimidating, taunting and degrading.

Conversely, in the case at bar, the conduct complained of by the plaintiff is not related in any way to his race. The plaintiff points to five discrete instances of allegedly harassing conduct spanning a period of four years: 1) his work was scrutinized in 2002, when he received a reprimand in 2004 for poor work in the seed lab, 2) the Commissioner's memorandum to the seed industry after plaintiff's reprimand assuring oversight over the seed lab, 3) his encounter with the Commissioner in the parking lot in June 2006, 4) his reassigned to the position of Program Director of the Genetically Modified Plant Program, and 5) his alleged assignment to an office with no chair in 2006. None of these alleged acts of harassment are based on race. In contrast to the daily degrading racial epithets in Miller v. Kenworth of Dothan, supra., the

conduct here is neither severe nor pervasive. Further, the alleged conduct did not unreasonably interfere with plaintiff's job performance.

        b.      <u>Disparate Treatment</u>

Plaintiff claims that although his reassignment to Program Director of the Genetically Modified Plant Program was a lateral transfer, he perceived it to be a demotion because he was not offered a monetary incentive to accept the position. He also claims that, although he currently has use of a state vehicle, back in 2005, he did not receive a state vehicle because of his race. The plaintiff complains that defendant usurped his authority by assuring the seed industry of oversight in the seed lab.

In order to "establish a *prima facie* case of disparate treatment, a plaintiff must show that (1) [he] is a member of a group protected by Title VII, (2) [he] was qualified for the position or benefit sought, (3) [he] suffered an adverse effect on [his] employment, and (4) [he] suffered from a differential application of work or disciplinary rules." <u>Enwonwu v. Fulton-DeKalb Hospital Authority</u>, 2008 WL 2009517 (11th Cir. May 12, 2008). The Eleventh Circuit held that "[a]n adverse employment action must effect a serious and material change in the terms, conditions, or privileges of employment." <u>Id.</u> (internal quotations omitted). Although the plaintiff may subjectively view an employment action as adverse, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." <u>Id.</u> Significantly, "a transfer can constitute an adverse employment action for Title VII purposes, but only if it involves a reduction in pay, prestige or responsibility." <u>Id.</u>

Although the plaintiff complains that he was not issued a state vehicle, he cannot establish that he was qualified for such a benefit. The plaintiff rarely traveled for any reason related to his job. In the event that he did travel, he had access to state vehicles from the state

motor pool. Finally, he cannot establish that any adverse effect on his employment or differential treatment because of his race.

Finally, the plaintiff alleges discrimination because the Commissioner wrote a memorandum to the seed industry assuring clients that he was providing oversight over the Seed Lab after the Department of Agriculture received numerous complaints about work performance in the lab. Although the plaintiff claims this usurped his authority, he cannot establish that this action was taken for any discriminatory reason or was the result of a differential application of work rules.

    c.    <u>Disparate Discipline</u>

The plaintiff complains that his reprimanded in October 2004 for poor work performance after the Department of Agriculture received complaints about the seed lab, and the written warning in May 2005 were unfair. In order to establish a *prima facie* case of disparate treatment in the enforcement of work rules[3], plaintiff must show that (1) he is a member of a protected class; (2) he has engaged in or been accused of engaging in misconduct similar to persons outside of his protected status (3); and that similarly situated white employees received more favorable treatment. <u>Early v. Morris Newspaper Corp.</u>, 54 F.Supp.2d 1261, 1271 (M.D. Ala. 1999) (citing <u>Jones v. Bessemer Caraway Medical Ctr.</u>, 137 F.3d 1306, 1311 n.6 (11th Cir. 1998), *modified in non-relevant part on denial of reh'g,* 151 F.3d 1321 (11th Cir. 1998) (modifying <u>Jones v. Gerwens</u>, 874 F.2d 1534, 1540 (11th Cir. 1989).

In evaluating whether the misconduct committed by plaintiff is similar to persons not in his protected class, courts have evaluated the differing status of employees. <u>See</u> <u>Fikes v.</u>

---

[3] The Eleventh Circuit has held that "[t]o establish discrimination in discipline, Plaintiff must show these things: 1) that he belongs to a protected class under Title VII; 2) that he was qualified for the job; and 3) that a similarly situated employee engaged in the same or similar misconduct but did not receive similar discipline." <u>Nicholas v. Board of Trustees of the University of Alabama</u>, 251 Fed.Appx. 637, 642 (11th Cir. 2007). The defendant acknowledges that the plaintiff held the position of Program Director and met the basic job qualifications.

Alabama Dept. of Youth Services, 2007 WL 1673940 (M.D. Ala. 2007)(holding that where employee failed to show she was disciplined by the same supervisor as her comparator and offered no evidence of the circumstances of the purported comparator's actions, plaintiff failed to establish that she and the comparator were similarly situated and received different treatment); Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989) (noting that "disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis"). See also, Nix v. W.L.C.Y. Radio/Rahall Communications, 738 F.2d 1181, 1186 (11th Cir.1984) (where employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown). An employee's supervisory status may serve as a basis for distinguishing conduct given to employees not in an employee's protected class. United States v. Crosby, 59 F.3d 1133, 1136 (11th Cir. 1995) (plaintiff's misconduct was distinguishable from comparator because, in part, her supervisory status resulted in heightened discipline); Suber v. Seminole County, Fla., 78 F.Supp.2d 1298, 1306 (M.D. Fla. 1999) (male employee who was disciplined less harshly due in part to plaintiff's status as supervisor); Curtis v. Teletech Customer Care Mgmt., 208 F.Supp.2d 1231, 1247 (N.D. Ala.) (record shows that compared to plaintiff, employee held a different position with different job responsibilities than plaintiff did, which was factored and considered in determining insufficient evidence of similarity).

Based on the law in this Circuit, in order to present evidence of differential treatment of a similarly situated employee regarding the October 2004 reprimand, the plaintiff must point to an employee outside his protected class who was not reprimanded after the employer received numerous complaints of poor work performance. In regard to the May 2005 warning, the plaintiff must also point to a comparator who failed to follow rules and directives regarding leave

time requests, delivery of seed samples in the lab, and proper purchasing procedures but did not receive a written warning. The plaintiff cannot make such a showing.

The Plaintiff must not only identify similarly situated employees, he has the burden of proving "that the quantity and quality of the comparator's misconduct…be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." McCann v. Tillman, ___ F.3d ___, 2008 WL 1991172 (11th Cir. May 9, 2008)(finding improper comparators where plaintiff's conduct was "qualitatively different" from her comparators' conduct). See also, Fikes v. Alabama Dept. of Youth Services, 2007 WL 1673940 (M.D. Ala. 2007)(citing Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). The plaintiff cannot make such a showing and thus, fails to establish a *prima facie* case.

### d.    Failure to Promote

The plaintiff finally claims that he was subjected to race discrimination when he did not receive a promotion in 2003. In order to establish a *prima facie* case of discrimination for failure to promote, the plaintiff must show that: "(1) [he] is a member of a protected class; (2) [he] was qualified and applied for the promotion; (3) [he] was rejected despite [his] qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted." Wilson v. B/E Aerospace, Inc. 376 F.3d 1079, 1089 (11th Cir. 2004). The plaintiff cannot establish that the promotion to Division Director he applied for in 2003 went to a lesser qualified employee. It is undisputed that the employee who received the promotion in question, Lance Hester, a white male, was ranked higher than the plaintiff on the register of applicants by the Alabama State Personnel Department. Thus, Mr. Hester was more qualified for the position and the plaintiff fails to establish a *prima facie* case.

Plaintiff cannot establish a *prima facie* case of race discrimination. Even if plaintiff could establish a *prima facie* case of discrimination, he cannot show that the reasons for the actions complained of are pretext for discriminatory conduct. Accordingly, summary judgment is due to be granted.

ii.    Retaliation

The plaintiff seems to bring four claims for retaliation in his two judicial complaints: 1) reassignment from his position as Program Director of the Seed Lab to Program Director of the Genetically Modified Plant Program, 2) alleged retaliation by the Commissioner arising out of the June 2006 encounter in the parking lot, 3) his alleged reassigned to an office without a chair in August 2006 and 4) referral to the Behavioral Health System by the EAP.

The plaintiff's claims regarding alleged retaliation arising out of the June 2006 encounter with the Commissioner in the office parking lot, and alleged retaliation when he was reassigned to an office without a chair in August 2006, were not mentioned at all in his EEOC charges.

Even if these claims were timely raised, plaintiff cannot establish that the alleged conduct was retaliatory. Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3, "forbids employer actions that discriminate against an employee … because [s]he has opposed a practice that Title VII forbids or has made a charge … in a Title VII investigation, proceeding, or hearing." Cyrus v. Hyundai Motor Mfg. Alabama, LLC, 2008 WL 1848796 (April 24, 2008)(quoting Burlington Northern & Santa Fe Ry. V. White, 548 U.S. 53 (2006)). In order to establish a *prima facie* case of retaliation using the McDonnell Douglas framework, plaintiff must show the following elements: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action. McCann v. Tillman, ___ F.3d ___, 2008 WL 1991172 (11th Cir.

May 9, 2008); <u>Hendrix v. Snow</u>, 2006 WL 288099 (11th Cir. 2006); <u>Brungart v. Bell South Communications, Inc.</u>, 231 F.3d 791, 798 (11th Cir. 2000); <u>Ashe v. Aronov Homes, Inc.</u> , 354 F.Supp.2d 1251, 1264 (M.D. Ala. 2004).  The Eleventh Circuit held that as with a discrimination claim, if the defendant "articulate[s] legitimate reasons for [its] actions, [plaintiff] must then show that the employer's proffered reasons for taking the adverse action were actually pretext for prohibited retaliatory conduct." <u>McCann v. Tillman</u>, ___ F.3d ___, 2008 WL 1991172 (11th Cir. May 9, 2008)(internal quotations omitted).  In order to make such a showing, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." <u>McCann v. Tillman</u>, ___ F.3d ___, 2008 WL 1991172 (11th Cir. May 9, 2008)(internal quotations omitted).

In this case, the Defendant admits that Mr. Crayton engaged in statutorily protected conduct when he complained of alleged discrimination to the ASEA in June 2006 and when he filed a Charge of Discrimination with the EEOC.

As concerns the second element of the *prima facie* case, Mr. Crayton fails to establish that he suffered an adverse employment action.  A tangible employment action is "a significant hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>Hulsey v. Pride Restaurants, LLC</u>, 367 F.3d 1238, 1245 (11th Cir. 2004))(citing <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998)). The plaintiff's reassignment from his position as Program Director of the Seed Lab to Program Director of the Genetically Modified Plant Program, encounter with the Commissioner in the parking lot in June 2006, alleged reassigned to an office without a chair in August 2006 and referral to the EAP do not constitute adverse employment actions.  It is undisputed that plaintiff

did not suffer a reduction in pay, benefits, or seniority as a result of any of the alleged conduct of which he complains. When an employment action does not result in a change in pay, benefits, or seniority, it is insufficient to sustain a retaliation claim. Horn v. University of Minnesota, 362 F.3d 1042, 1046 (8th Cir. 2004) (quoting Buettner v. Arch Coal Sales Co., 216 F.3d 707, 715 (8th Cir. 2000), cert. denied 531 U.S. 1077, 121 S.Ct. 773, 148 L.Ed 2d 672 (2001).

Finally, there is no causal connection between any protected conduct and any alleged adverse employment action taken against Mr. Crayton. In order to establish a causal connection, a plaintiff must prove that the protected activity and the adverse action are "not completely unrelated." Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004). The burden of causation may be met "by showing that the employer gained knowledge of the employee's protected conduct at a point temporally proximate to the adverse action." Ashe, 354 F.Supp.2d at 1264. Temporal proximity alone, however, is insufficient to create a genuine issue where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct. Brungart, 231 F.3d at 799.

There is no relationship between the plaintiff's statutorily protected activity and his reassignment from his position as Program Director of the Seed Lab to Program Director of the Genetically Modified Plant Program, encounter with the Commissioner in the parking lot June 2006, alleged reassigned to an office without a chair in August 2006, or referral to the EAP. The plaintiff was reassigned to Program Director of the Genetically Modified Plant Program to satisfy an emerging need in the Department of Agriculture. Undisputedly, the plaintiff at all times had a chair for his office, and the brief encounter with the Commissioner resulted in no tangible employment action. The referral to the EAP occurred after the plaintiff exhibited inappropriate behavior at work; specifically after an employee complained about the plaintiff's

angry behavior when she simply attempted to hold a door open for him, and after he accused his supervisor of being a klansman without a hood.

Even if plaintiff could establish a prima facie case of retaliation, he cannot show that the reasons for the actions complained of are pretext for retaliatory conduct. Accordingly, summary judgment is due to be granted.

## V.  Conclusion

For all the reasons stated herein, Defendant submits that Summary Judgment is due to be entered in its favor and against the Plaintiff on all claims asserted herein.


_____/s/_____Emily C. Marks_____
EMILY C. MARKS

_____/s/_____E. Hamilton Wilson, Jr.
E. HAMILTON WILSON, JR.
Attorneys for the Defendant

OF COUNSEL:
BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama  36102-2148
Phone:  (334) 387-7680
Fax:     (334) 387-3222

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2008, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following:

Juraldine Battle-Hodge
207 Montgomery St., Ste. 215
Montgomery, AL  36104-3528

/s/ Emily C. Marks
OF COUNSEL