**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF ALABAMA
OFFICE OF THE CLERK
POST OFFICE BOX 711
MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK                                    TELEPHONE (334) 954-3600

July 30, 2008

# NOTICE OF CORRECTION

**From:    Clerk's Office**

**Case Style: John Crayton vs. Alabama Department of Agriculture & Industries**
**Case Number: 2:07cv626-MEF**

**Pleading : #28 - Response to Motion to Strike Portions of Plaintiff's Affidavit**

**Notice of Correction is being filed this date to advise that the referenced pleading was e-filed on 7/21/08 with Attachment A (Affidavit of John Crayton) unsigned.**

**The corrected pdf document is attached to this notice.**

STATE OF ALABAMA )
)
COUNTY OF MONTGOMERY )

RE: *JOHN CRAYTON V. ALABAMA DEPARTMENT OF AGRICULTURE & INDUSTRIES*
CASE NO.: 2:07- CV-626-MEF

## AFFIDAVIT OF JOHN CRAYTON

Before me, the undersigned authority in and for said county and state personally appeared John Crayton who is known to me and being first duly sworn, deposes and says under oath as follows:

1. My name is John Crayton. I am over the age of nineteen and I have personal knowledge of the matter set forth herein.

2. When I became Program Director of the Seed Program (Seed Division), there was a four month back log of samples, shortage of personnel, and equipment that was is disrepair. In spite of this and an administration that did not see the need to allow me to hire adequate personnel and purchase needed equipment. The three analysts and I worked two to three hours beyond our regular work hours for four months to eliminate the back log. As a result of eliminating the back log of samples, we established and maintained a record average turn around time of twenty one days on all test reports while I was Director of the Seed Program.

3. I applied for Division Director. Lance Hester applied for this position at the time. I have worked for the administration more years than Lance Hester. I have over 30 years of experience with the administration. I have a bachelor's degree, and a master's degree. Whereas, Lance Hester does not have these degrees. Notwithstanding my credentials and work experience, Mr. Hester out ranked me. Mr. Cofer was promoted to Division Director from the same register, yet he was ranked below George Parish and me.

4. I was summoned to Ron Sparks' office between 2003 and 2004. The meeting involved, Wilma Fitzpatrick, Annie Patterson, and I not participating in a voluntary fellowship together. This was a monthly gathering. I informed Mr. Sparks that the hearsay he was confronting me about was true as I chose not to participate. I informed Mr. Sparks that I chose not to participate due to the racial atmosphere that he and the administration had created. I further informed Mr. Sparks that I chose not to use my break time or lunch hour and my own money for this fellowship. Since this meeting I have personally been subjected to confrontations by Mr. Sparks.

5. The reprimand of October 4, 2004 came without prior conferencing or warning. I received this reprimand even though a query of my database along with 760 plus substitute tests reports for the month of August 2004 had a better than average turn around time of twenty days as opposed to the regular twenty-one days.

6. I received a letter of complaint from Bragg Farms. Through a query of my database I personally showed the administration that all of the test results for Bragg Farms for the month of August 2004 had a better than average turn around time of twenty days as opposed to the regular twenty-one days. Based on this report, I informed the administration that "these letters appeared to be solicited by the administration".

7. During the month of August 2004, and September 2004, the department computer server was out of service. This affected everyone using the server including Mr. Hester's program, Food and Safety, but yet he had the audacity to accuse me of not properly doing my job.

8. Two memos, one from Mr. Johnson and one from Mrs. Patterson to Arnold Leak, the department's information technology specialist, complaining about not having access to their data base will show that this affected the whole department.

9. The reprimand affected my annual evaluation by reducing my overall score by seven (7) points this limiting me to a one (1) step raise as I would have received a two (2) step raise.

10. This October 7, 2004 memorandum of Mr. Sparks was not only sent to Alabama Seed Industry, but also to other states' Seed Control Officials. The memorandum stripped me of my authority. I was embarrassed and felt harassed because of Mr. Sparks personally circulating this memorandum to outsiders.

11. I did not travel out of town on a regular basis due to a shortage of trained experienced Seed Analyst to keep up with the work load maintain the newly established twenty-one day turn around time on all test results. I had to personally carry out this requirement. During this time I encountered several efforts to sabotage my work. My computer files were deleted, manipulated and tampered with. I am personally aware that Tomm Johnson, Tony Cofer and Joe Debro, whites, used their cars predominately to travel from home to work.

12. Getting the seed samples from the loading dock or the parking lot had been the sole responsibility of the inspector for twenty eight years. Mr. Murphy gave me permission to order parts and supplies, especially those for the germinators and file the necessary forms after the fact. The reasoning for this was to prevent tests in progress from being ruined if a motor, a pump, or some other vital parts went out.

13. In June 2006, seven black employees of the Department of agriculture and Industries went to the Alabama State Employees Association (ASEA) to appraise the

       Association of the racist charged atmosphere perpetuated by Mr. Sparks and his Administration.

14. I, along with other blacks, complained about the reissuing of cars and promotions. I also complained about Mr. Sparks pretending not to hear or see blacks when they would speak in passing on the hallways. I have personally experienced Mr. Sparks being rude and abrasive to me.

15. I was present and am personally aware that a meeting concerning the June 2006 encounter with Mr. McArthur and Mr. Williams was recorded. I am personally aware that Mr. Sparks was very emotional, abrasive in this meeting.

16. I am personally aware that the position of Genetically Modified Plants and Plants Products Program Director was created at the time Ron Sparks removed me from my position as Program Director of the Seed Program. I am personally aware that Mr. Sparks transferred the duties of the Seed Program to Agriculture Compliance. I am personally aware that once Mr. Sparks placed these duties under Agriculture Compliance he promoted Benny Hitch to Program Director. I am also personally aware that the Seed Program was lowered to a unit manger's level. This position was stripped of all its regulatory, administrative and enforcement duties.

Dated this the 25 day of June 2008

_John Crayton_
John Crayton

**STATE OF ALABAMA**
**COUNTY OF MONTGOMERY**

    On this the 25th day of July 2008, before me, the undersigned Notary Public, in and for said State and County, personally appeared, John Crayton who is known to me, and states that the foregoing information is true and correct to the best of his information, belief and knowledge, and that he executed same voluntarily on the day the same bears date.

_____
NOTARY PUBLIC

3/25/12
_____
My Commission Expires