IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN L. CRAYTON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:   2:07-cv-626-MEF |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | (LEAD CASE) |
| AGRICULTURE & INDUSTRIES, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| JOHN L. CRAYTON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:   2:07-cv-1111-MEF |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | (MEMBER CASE) |
| AGRICULTURE & INDUSTRIES, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held on this case on August 28, 2008, wherein the following proceedings were held and actions taken:

1.  **PARTIES AND TRIAL COUNSEL:** The parties before the court are correctly named as set out below; and the designated trial counsel for the parties are as set out below:

**PARTIES**                            **TRIAL COUNSEL**

Plaintiff: John Crayton          Juraldine Battle-Hodge
                                 (Law Offices of Juraldine Battle-Hodge)

|   |   |
|---|---|
| Defendant: Alabama Department of Agriculture & Industries | E. Hamilton Wilson<br>Emily C. Marks<br>(Ball, Ball, Matthews & Novak, P.A.) |

**COUNSEL APPEARING AT PRETRIAL HEARING:**

For plaintiff:        Juraldine Battle-Hodge
                      (Law Offices of Juraldine Battle-Hodge)

For defendant:        E. Hamilton Wilson
                      Emily C. Marks
                      (Ball, Ball, Matthews & Novak, P.A.)

2.     **JURISDICTION AND VENUE:** The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343(a)(3). The plaintiff is employed within Montgomery County, Alabama, and the Defendant does business within Montgomery County. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Personal jurisdiction is not contested.

3.     **PLEADINGS:** The following pleadings and amendments were allowed in the two consolidated cases: Complaint and Amended Complaint by the plaintiff; Answer to Complaint and Answer to Amended Complaint by Defendant; Complaint by the plaintiff and Motion to Dismiss the Complaint by Defendant.

4.     **CONTENTIONS OF THE PARTIES:**

    (a)    The Plaintiff:

In an EEOC charge, the intake officer only takes in minimal information. Plaintiff properly indicated that the actions taken against him were continuing. Based on the fact that the discrimination and retaliation against Plaintiff were continuing, Plaintiff had the right to bring all of his complaints of discrimination that relate to the timely filed complaint of discrimination/retaliation. Since these actions by the Defendant were a continuing violation, Plaintiff is allowed to bring all of his complaints if at least one of his claims falls within the applicable 180 day window. The retaliation that occurred on July 28, 2006, falls within the applicable 180 days; therefore, each charge is timely filed. The ultimate retaliation was related to the acts of failure to promote, discrimination, retaliation and the hostile work environment that the Plaintiff was subjected to. These acts were so intricately related until it is clear that they were part of the same acts that Plaintiff mentioned in his EEOC Complaint.

Plaintiff has made viable causes of action for Title VII claims. Plaintiff has made a prima facie case for discrimination. Plaintiff is a member of the protected group, as he

is black. Therefore, the first element is met.

Plaintiff was subjected to adverse employment treatment. (1) In April 2005, the Governor sent out a mandate to have all unnecessary cars turned in. Plaintiff's car was taken and not returned to him as other white members of management were. (2) Plaintiff was transferred from his position of seed director to genetically modified plant and plants product director. This was in effect a constructive demotion.

After the cars were taken up, white employees soon thereafter received their cars back; however, Plaintiff did not. Plaintiff was treated less favorably than Benny Hitch, Lance Hester, Tomm Johnson, Tony Cofer and Joe Debro, white/males. The Defendant states that Plaintiff did not use his car for substantial traveling. Though this may be true, Tomm Johnson, Tony Cofer and Joe Debro also used their vehicles predominately for travel to and from home, yet their cars were returned. These individuals were similarly situated to Plaintiff as they were all members of management.

With regard to being transferred, Plaintiff was replaced by Benny Hitch, a white male. The reasons offered by the Defendant for its actions are of such a nature that a genuine question exists as to whether or not the reasons given by the Defendant for its actions was intentional discrimination. As such, Plaintiff has presented a prima facie case for these matters to be submitted for consideration by a jury of his peers.

Plaintiff has met the legal requirements for retaliation. Plaintiff was involved in statutorily protected activity. Plaintiff was involved in protected activity when he filed his complaint with A.S.E.A. in June of 2006 and when he filed his EEOC Complaint on September 27, 2006.

With regard to the A.S.E.A. Complaint, Plaintiff suffered an adverse employment action when he was transferred from the position of Seed Program Director to the position of Genetically Modified Plant and Plants Product Director. This action was in direct retaliation for the A.S.E.A. complaint.

The Plaintiff also suffered adverse employment action when he was made to undergo a psychiatric evaluation on November 14, 2006, in retaliation for filing his September 27, 2006, EEOC Complaint.

The Plaintiff has made a causal connection between involvement in statutorily protected activity and the adverse employment action Plaintiff received. Plaintiff was transferred from his position only after he voiced his concerns to the A.S.E.A. The Complaint to the A.S.E.A. was in June 2006. Only a month later, Plaintiff was transferred. Likewise, immediately after the filing of the EEOC charge, Plaintiff was made to undergo a mental evaluation. The Defendant was aware of both filings. Mr. Sparks was present at the A.S.EA. meeting and he was aware of the EEOC filing. There

is a causal connection between the statutorily protected activity the Plaintiff was involved in and the disparate treatment he received.

The Plaintiff has established a hostile work environment. Plaintiff has shown that (1) He belongs to a protected group; (2) he has been subjected yo unwelcome harassment; (3) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment to create such a discriminatorily abusive work environment, and (4) the employer was responsible for such environment under the theory of vicarious or direct liability.  Plaintiff is black, thus he has met the first element.

Plaintiff was subjected to unwelcome harassment based on his race.  Plaintiff constantly protested the harassment and made it known to the Defendant that he simply wanted to be left alone to do his job.  The harassment was unwelcome.

Defendant's harassment was severe or pervasive.  There were a great number episodes that unreasonably interfered with Plaintiff's work environment.  Included in these were: (1) April 1, 2004 meeting regarding employee get together meetings; (2) October 4, 2004, Plaintiff was reprimanded unfairly for problems that were caused by a problem that was caused by the breakdown of the department's server; (3) October 4, 2004, Sparks sent letter to industry usurping Plaintiff's authority as seed director; (4) once Defendant transferred Plaintiff, Defendant sent Plaintiff to an office without a chair and (5) June 29, 2006, Mr. Sparks harassed Plaintiff as he was walking into building.  These actions severely interfered with Plaintiff's work environment.

The Defendant has a policy that provides that discriminatory or wrongful acts should be reported to Defendant.  Plaintiff reported such incidents in that the acts were directed by and directly involved Defendant.  For example, all of the mentioned incidents involved the commissioner; therefore, it is clear that the Defendant had actual notice and constructive notice acquate to warrant liability on the part of the Defendant.

Plaintiff has successfully made a claim for failure to promote.  The Plaintiff has shown that (1) he belonged to a protected group; (2) applied for and was qualified for job; (3) despite qualifications, was rejected and the position was filled with a person not in the protected group.  Plaintiff applied for the position of division director on April 30, 2003.

Plaintiff was qualified for the position due to his vast experience and education.  Plaintiff had worked in a supervisory position for over 21 years with a successful tract record.  Plaintiff surpassed the educational requirement.  Plaintiff had more supervisory experience than Lance Hester.  Yet, Lance Hester was chosen for the position.  Plaintiff is black, making him a member of a protected group.  Hester is not a member of the protected group.

Plaintiff is due the following relief:
1. A judgment declaring that Defendant violated 28 U.S.C. sec 1331, 42 U.S.C. 2000 (e), et seq. and retaliation;
2. All back pay and fringe benefits as a result of retaliation and discrimination, with interest;
3. Attorney's fees;
4. Costs;
5. Prejudgment interest;
6. An award of such compensatory damages for any loss of wages, and loss of benefits, including, but not limited to, retirement pension benefits, mental anguish, emotional distress, and embarrassment, both past, present and future to which Plaintiff may be entitled; and such further, other and different legal or equitable relief as the Court may deem appropriate, and
7. Punitive damages.

(b)   The Defendant:

This is an action for relief under 42 U.S.C. §2000e, et seq., (Title VII) for claims of race discrimination and retaliation. The plaintiff is currently employed by the Defendant, Alabama Department of Agriculture as Program Director of the Genetically Modified Plant Program. He alleges that the defendant discriminated against him on the basis of his race, and retaliated against him

Mr. Crayton contends he was discriminated against by his employer, naming conduct going back as far as 2002 to support his claim. The plaintiff also claims he was retaliated against after he complained to the Alabama State Employees Association (ASEA) about alleged discrimination and after he filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). The Alabama Department of Agriculture & Industries denies all of the Plaintiff's allegations and submits that it engaged in legitimate, nondiscriminatory, non-retaliatory employment practices.

The plaintiff's claims in his judicial complaints are limited to those alleged acts of discrimination contained in his EEOC charges. The only claims that are common to both the EEOC complaints and the judicial complaints are: 1) the plaintiff's reassignment from Program Director of the Seed Lab to Program Director of the Genetically Modified Plant Program in July 2006, and 2) referral to the EAP. Any other claims made by the plaintiff in his judicial complaints are barred for plaintiff's failure to include them in his EEOC Charges. None of the claims brought by the plaintiff in his judicial complaint are reasonably related to charges mentioned in the EEOC Complaints or ones which

5

reasonably grew out of the existing charges.

To the extent that Mr. Crayton makes claims for race discrimination or retaliation in his first judicial complaint for events prior to March 31, 2006, they are barred for failure of the plaintiff to file his charge within 180 days of the discriminatory act. Mr. Crayton filed an EEOC Charge of Discrimination on September 27, 2006. This Court may only consider discrete acts that occurred between March 31, 2006 and September 27, 2006 (180 days before September 27, 2006). 42 USC § 2000 e – (5)(e)(1) (charge shall be filed within 180 days after the alleged unlawful employment practice occurred.). Accordingly, any alleged discriminatory conduct that occurred prior to March 31, 2006 is time-barred.

The plaintiff seems to bring eight claims for discrimination in his two judicial complaints: 1) reassignment from his position as Program Director of the Seed Lab to Program Director of the Genetically Modified Plant Program, 2) scrutiny of his work by supervisor Ronnie Murphy in 2002, 3) denial of promotion to division director in April 2003, 4) reprimand of October 4, 2004, 5) October 4, 2004 Memorandum from the Commissioner to members of the Seed Industry allegedly usurping his duties, 6) failure to receive a state vehicle in 2005, 7) alleged harassment by the Commissioner arising out of the June 2006 encounter in the parking lot, and 8) alleged harassment when he was reassigned to an office without a chair in August 2006. With the exception of Mr. Crayton's claim regarding his reassignment to the position of Program Director of the Genetically Modified Plant Program; his claims of discriminatory conduct were not timely raised in his EEOC complaints. Accordingly, those race discrimination claims are barred.

The plaintiff points to five discrete instances of allegedly harassing conduct spanning a period of four years: 1) his work was scrutinized in 2002, when he received a reprimand in 2004 for poor work in the seed lab, 2) the Commissioner's memorandum to the seed industry after plaintiff's reprimand assuring oversight over the seed lab, 3) his encounter with the Commissioner in the parking lot in June 2006, 4) his reassigned to the position of Program Director of the Genetically Modified Plant Program, and 5) his alleged assignment to an office with no chair in 2006. Even if these claims were timely raised, plaintiff cannot establish that the alleged conduct was discriminatory. The plaintiff cannot show that he was subjected to unwelcome harassment based on his race or that any alleged conduct altered the terms and conditions of his job and created a discriminatorily abusive working environment. The conduct complained of by the plaintiff is not related in any way to his race.

The plaintiff's reassignment to Program Director of the Genetically Modified Plant Program was not an adverse employment action. The reassignment did not involve a reduction in pay, prestige or responsibility. The plaintiff cannot establish that any adverse effect on his employment or differential treatment occurred because of his race.

The plaintiff complains that his reprimanded in October 2004 for poor work performance after the Department of Agriculture received complaints about the seed lab, and the written warning in May 2005 were unfair. The plaintiff offers no evidence of a similarly situated employee who was engaged in similar conduct but received different discipline. In order to present evidence of differential treatment of a similarly situated employee regarding the October 2004 reprimand, the plaintiff must point to an employee outside his protected class who was not reprimanded after the employer received numerous complaints of poor work performance. The plaintiff cannot make such a showing.

The plaintiff finally claims that he was subjected to race discrimination when he did not receive a promotion in 2003. The plaintiff cannot establish that the promotion to Division Director he applied for in 2003 went to a lesser qualified employee. It is undisputed that the employee who received the promotion in question, Lance Hester, a white male, was ranked higher than the plaintiff on the register of applicants by the Alabama State Personnel Department. Thus, Mr. Hester was more qualified for the position and the plaintiff fails to establish a *prima facie* case.

Plaintiff cannot establish that any of the legitimate, non-discriminatory reasons articulated by the Defendant for its conduct are pretextual.

The plaintiff seems to bring four claims for retaliation in his two judicial complaints: 1) reassignment from his position as Program Director of the Seed Lab to Program Director of the Genetically Modified Plant Program, 2) alleged retaliation by the Commissioner arising out of the June 2006 encounter in the parking lot, 3) his alleged reassigned to an office without a chair in August 2006 and 4) referral to the Behavioral Health System by the EAP. The plaintiff's claims regarding alleged retaliation arising out of the June 2006 encounter with the Commissioner in the office parking lot, and alleged retaliation when he was reassigned to an office without a chair in August 2006 were not mentioned at all in his EEOC charges and are barred.

Even if these claims were timely raised, plaintiff cannot establish that the alleged conduct was retaliatory. The plaintiff cannot establish a *prima facie* case of retaliation under Title VII. Mr. Crayton cannot establish that he suffered an adverse employment action. The plaintiff's reassignment from his position as Program Director of the Seed Lab to Program Director of the Genetically Modified Plant Program, encounter with the

7

Commissioner in the parking lot in June 2006, alleged reassigned to an office without a chair in August 2006 and referral to the EAP do not constitute adverse employment actions. The plaintiff did not suffer a reduction in pay, benefits, or seniority as a result of any of the alleged conduct of which he complains. When an employment action does not result in a change in pay, benefits, or seniority, it is insufficient to sustain a retaliation claim.

There is no causal connection between any protected conduct and any alleged adverse employment action taken against Mr. Crayton. Defendant has legitimate non-discriminatory, non-retaliatory reasons for its actions. Plaintiff further cannot establish that the Defendant's non-discriminatory and/or non-retaliatory reasons for its actions are pretext for retaliation.

Defendant contends that Plaintiff has not suffered any damages and is not, therefore, entitled to a verdict in his favor for damages or declaratory relief.

Defendant adopts and incorporates all defenses raised in its Answer, and Answer to the Amended Complaint, as if set forth more fully herein.

1. **STIPULATIONS BY AND BETWEEN THE PARTIES:**

    (a)   Plaintiff began employment with the Alabama Department of Agriculture & Industries in May 1976.

It is ORDERED that:

(1) The jury selection and trial of this cause, which is to last two to three (2-3) days, are set for September 29, 2008, at 10:00 a.m. at the United States Courthouse in Montgomery, Alabama;

(2) A trial docket will be mailed to counsel for each party approximately three weeks prior to the start of the trial term;

(3) The parties are to file their pre-trial briefs, if any, by September 15, 2008;

(4) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge to each have a set of the exhibits;

(5)  All deadlines not otherwise effected by this order will remain as set forth in the Uniform Scheduling Order (Doc. #9) entered by the court on October 26, 2007;

(6)  All understandings, agreements, deadlines, and stipulations contained in this Pretrial Order shall be binding on all parties unless this Order be hereafter modified by Order of the Court.

DONE this the 2nd day of September, 2008.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE