IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN L. CRAYTON              )
                            )
        Plaintiff,          )
                            )
v.                          )        CASE NO. 2:07-cv-626-MEF
                            )
ALABAMA DEPARTMENT OF        )
AGRICULTURE & INDUSTRIES,     )
                            )
        Defendant.          )
_____

JOHN L. CRAYTON              )
                            )
        Plaintiff,          )
                            )
v.                          )        CASE NO. 2:07-cv-1111-MEF
                            )
ALABAMA DEPARTMENT OF        )
AGRICULTURE & INDUSTRIES,     )        **(WO - Publish)**
                            )
        Defendant.          )

**MEMORANDUM OPINION AND ORDER**

John L. Crayton ("Crayton"), an African-American employee of the Alabama

Department of Agriculture and Industries ("the Department"), brings these two lawsuits

against his employer pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e *et seq.*[1]  Pointing to a variety of incidents and events, Crayton contends that

he was subjected to disparate treatment on the basis of his race.  He also contends that the

Department retaliated against him for making complaints about what he perceived to be race

_____

[1]  Crayton's claims are brought solely pursuant to Title VII.  He makes no claims
pursuant to any other federal statute or to any state law.

discrimination directed toward him or toward other African-American employees.  This cause is now before the Court on the Department's Motion for Summary Judgment (Doc. # 16).  The Court has carefully considered all proper and timely submissions in support of and in opposition to the motion.  For the reasons set forth below, the Court finds that the motion is due to be GRANTED.

## JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).  The parties do not contest personal jurisdiction and venue, and the Court finds adequate allegations in support of personal jurisdiction and venue.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.   An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

2

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

3

## FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

Crayton, an African-American male, has been employed by the Department since May of 1976.  Initially, Crayton worked as a Seed Analyst.  After approximately twenty-five years of service as a Seed Analyst, Crayton became Program Director for the Seed Program.  In September of 2006, Crayton was transferred out of this position into another Program Director position, which put him in charge of the Genetically Modified Plant and Plant Products Program.[2]

For a short period of time, Crayton had a state-owned vehicle provided to him because his job sometimes required him to travel.  As Program Director for the Seed Program he had to travel to Auburn approximately twice a year to attend meetings.  Additionally, his job duties as Director of the Seed Program included visits to seed outlets and to visit with inspectors, but he admits he never performed those parts of his job duties.  Primarily, he used the State-owned vehicle issued to him to travel to and from work in Montgomery.

Because of statewide budget problems, the Governor of the State of Alabama gave a directive in April of 2005, by which all state-owned vehicles assigned to employees were recalled.  Crayton admits that all Department employees, regardless of race, had to surrender

---

[2]  The Department advised Crayton of this transfer in late July of 2006.

4

their state-owned vehicles after the Governor's directive.  At some point, however, Crayton contends that he noticed that some Caucasian employees had received their vehicles back. He further contends that some of these Caucasian employees only used their state-owned vehicles to travel to and from work.  In September of 2006, Crayton was once again assigned a State-owned vehicle.  He had earlier complained to Alabama State Employees Association ("ASEA") about the failure of the Department to assign a state-owned vehicle to him and another African-American employee of the Department.

On September 27, 2006, Crayton filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  In this Charge, he complained of race discrimination and retaliation between July 28, 2006 and September 26, 2006.  Specifically, Crayton complained that his supervisor constantly challenged Crayton's decisions. Additionally, Crayton complained that after taking complaints about the treatment of African-American employees at the Department to the Alabama State Employees Association ("ASEA") in June of 2006, he was subjected to race discrimination and retaliation when the Department reassigned him from his position as the Program Director for the Seed Program to a recently created position of Program Director for the Genetically Modified Plant and Plant Products Program.

On May 3, 2007, Crayton filed a second Charge of Discrimination with the EEOC. He once again complained of race discrimination and retaliation against him, this time between December 5, 2006 and May 2, 2007.  Specifically, Crayton again complained about

5

what he considered to be the demotion from his position as the Program Director for the Seed Program to a recently created position of Program Director for the Genetically Modified Plant and Plant Products Program.  Additionally, he complained that he had been required to enroll in an Employee Assistance Program ("EAP") in November of 2006.  Finally, he complained about a delay in the completion of his performance appraisal.

On July 9, 2007, Crayton filed a Complaint (Doc. # 1 in 2:07cv626) against the Department.  In this Complaint, he alleged race discrimination dating back to January of 2002 and retaliation against him beginning in June of 2006, when he complained to the ASEA about race discrimination.  Crayton's claims of discrimination and retaliation were brought solely pursuant to Title VII.  On December 21, 2007, Crayton filed a motion seeking to amend the complaint to strip out the retaliation claims and he filed a second lawsuit (2:07cv1111) in which he set forth those retaliation claims.  Crayton's motion for leave to amend his original complaint was granted and he filed the amended complaint (Doc. # 13 in 2:07cv626).  The Court granted the Department's motion to consolidate these two cases for all pretrial matters and for trial.

On August 28, 2008, the parties appeared before the Court for a final pretrial conference.  Having been apprized that the Order on Pretrial Hearing would supplant the pleadings and frame the issues in the case, the parties submitted their contentions.  Crayton's claims are consequently limited by these submissions to the following: (1) he was discriminated against on the basis of his race when he was not selected for the position of

Division Director in April of 2003;(2) he was discriminated against on the basis of his race when he was transferred from the position of Seed Director to the Genetically Modified Plant and Plants Product Director, which transfer was a constructive demotion; (3) he was discriminated against on the basis of his race when his state issued vehicle was not returned to him after it was taken away in April of 2005; (4) he was retaliated against after he made a complaint to the ASEA in June of 2006, in that he was transferred from the position of Seed Director to the Genetically Modified Plant and Plants Product Director; (5) he was retaliated against after he filed he Charge of Discrimination with the EEOC on September 27, 2006, in that he was required to undergo a psychiatric evaluation on November 14, 2006; and (6) he was subjected to a racially hostile working environment.[3]

Any claims other than those set forth above, including those claims which Crayton alleged in his complaints, but failed to include in his contentions in the Final Pretrial Order, are deemed abandoned by virtue of Crayton's failure to include them in his contentions for the Final Pretrial Order.  To the extent that The Department's motion for summary judgment seeks judgment as a matter of law on any claims Crayton has now abandoned, that motion is due to be DENIED as MOOT.

---

[3]  Crayton's claim that he was subjected to a racially hostile working environment is predicated on the following events: (a) an April 1, 2004 meeting regarding employee get together meetings; (b) an October 4, 2004 reprimand which Crayton contends was unfair; (c) an October 4, 2004 letter to the industry usurping Crayton's authority as Seed Director; (d) failure to provide Crayton a chair in his office when he was transferred to the position of Genetically Modified Plant and Plant Products Director; and (e) an incident of alleged verbal harassment on June 29, 2006 involving the Commissioner of the Department of Agriculture.

## DISCUSSION

### A.    OVERVIEW OF APPLICABLE LAW

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a).  The critical element in establishing wrongful discrimination in violation of Title VII is discriminatory intent.  *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993).  Title VII also prohibits an employer from retaliating against an employee for reporting discrimination.  42 U.S.C. §§ 2000e3(a).[4]

Under Title VII, a plaintiff bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence.  *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).  Discriminatory intent can be established through a variety of means.  *See, e.g., Davis v. Qualico Miscellaneous Inc.,* 161 F. Supp. 2d 1314, 1319 (M.D. Ala. 2001).  Where, as here, a plaintiff seeks to prove intentional discrimination through circumstantial evidence[5] of the employer's intent, the Court applies some version of the

---

[4]  42 U.S.C. § 2000e3(a) bars retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

[5]      Because Crayton offers nothing which could conceivably be considered direct evidence or statistical evidence in support of any of his claims, the Court will analyze this motion for summary judgment under the circumstantial evidence paradigm.

familiar tripartite burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and its progeny.

Under this framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination.  *See, e.g., Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045 (1998).  The purpose of the *prima facie* case is to show an adverse employment decision that resulted from a discriminatory motive.  *See, e.g., Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1143 (11th Cir. 1983).  Once a plaintiff establishes the requisite elements of the *prima facie* case, the defendant has the burden of producing a legitimate, non-discriminatory reason for the challenged employment action.  *See, e.g., Holifield v. Reno,* 115 F.3d 1555, 1564 (11th Cir. 1997) (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981)).  The employer's burden is "exceedingly light."  *Holifield,* 115 F.3d at 1564.  This burden is one of production, not persuasion and consequently, the employer need only produce evidence that could allow a rational fact-finder to conclude that the challenged employment action was not made for a discriminatory reason.  *See, e.g., Davis,* 161 F. Supp. 2d at 1321.

If such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination.  *See, e.g., Holifield,* 115 F.3d at 1565; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997) (plaintiff "has the opportunity to discredit the defendant's proffered reasons for its decision").  Thus, once the employer articulates a legitimate, non-discriminatory reason, the burden returns to the

9

employee to supply "evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Davis,* 161 F. Supp. 2d at 1322 (citing *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*)).  The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Burdine,* 450 U.S. at 256; *Combs,* 106 F.3d at 1528.  A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000).

A plaintiff can establish a prima facie case by showing that: (1) he was a member of a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action by his employer; and (4) similarly situated employees outside of the protected class were treated more favorably.  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).  Nevertheless, the prima facie case formulation is flexible and often dependent on the particular facts of a case.  *Id.*  Thus, the articulation of the *prima facie* case may vary from a case involving a failure to promote to a case involving termination of employment.  Title VII has also been recognized to provide employees with a remedy for

work place harassment on the basis of race.  This type of claim has its own requirements which will be discussed below.  As previously noted, Title VII provides a cause of action to those who have been retaliated against in violation of the statute.  The applicable legal paradigm for such retaliation claims is similar, but not identical, to the burden shifting paradigm applicable to discrimination claims brought pursuant to Title VII.

Suits pursuant to Title VII may only be brought if the plaintiff has satisfied certain statutorily mandated requirements prior to suit.  Failure to properly and timely comply with this requirements may bar a plaintiff's claim.  These requirements will be discussed in more detail below.

**B.    CLAIMS WITH PROBLEMS RELATING TO SATISFACTION OF ADMINISTRATIVE PREREQUISITES TO MAINTAINING TITLE VII ACTION**

### 1. Applicable Legal Analysis

Title 42 U.S.C. § 2000e-(5)(e)(1) specifies the prerequisites that a plaintiff must satisfy before filing a private civil action such as this one which is brought solely pursuant to Title VII.  *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109 (2002).  According to this provision, "[a] charge...shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]"  42 U.S.C.§ 2000e-(5)(e)(1).  *Accord, Pijnenburg v. West Ga. Health Sys., Inc.,* 255 F.3d 1304, 1305 (11th Cir.), *reh'g denied,* 273 F.3d 1117 (11th Cir. 2001) ("It is settled law that in order to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with

the EEOC within 180 days after the alleged unlawful employment practice occurred."). This requirement guarantees "the protection of civil rights laws to those who promptly assert their rights" and "also protects employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State Coll. v. Ricks,* 449 U.S. 250, 256-57 (1980).

The United States Supreme Court has explained that "strict adherence" to this procedural requirement "is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826 (1980).  By choosing this relatively short deadline, "Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Id.*  Indeed, this procedural rule is not a mere technicality, but an integral part of Congress' statutory scheme that should not "be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152 (1994).  Thus, if a plaintiff fails to file an EEOC charge before the 180-day limitations period, the plaintiff's subsequent lawsuit is barred and must be dismissed for failure to exhaust administrative remedies.  *See, e.g., Morgan,* 536 U.S. at 113 ("[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"); *Brewer v. Alabama,* 111 F. Supp. 2d 1197, 1204 (M.D. Ala. 2000).[6]

---

[6] Title VII's time limit on filing a Charge of Discrimination with the EEOC is not jurisdictional.  Instead, it is akin to a statute of limitations and is subject to waiver, estoppel and equitable tolling.  *See, e.g., Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 3939

> The existence of past acts and the employee's prior knowledge
> of their occurrence, however, does not bar employees from
> filing charges about related discrete acts so long as the acts are
> independently discriminatory and charges addressing those acts
> are themselves timely filed. Nor does the statute bar an
> employee from using the prior acts as background evidence in
> support of a timely claim.

*Morgan,* 536 U.S. at 113.

Of course, the determination of whether a plaintiff has filed a timely EEOC Charge

depends on when the alleged unlawful employment practice "occurred." The United States

Supreme Court has provided further clarification of the nature of this inquiry and set forth

different standards for claims involving "discrete acts" and "hostile environment"

allegations. *See generally*, *Morgan,* 536 U.S. 101. In cases involving discrete discriminatory

acts, such as termination of employment, failure to promote, denial of transfer, or refusal to

hire,[7] a discrete discriminatory act occurs on the day that it happens. *Morgan,* 536 U.S.

110-16. More specifically,

> [t]he 180-day filing period begins to run from "[a] final decision

---

(1982). Equitable tolling allows a plaintiff to avoid the bar of the limitations if, despite all
due diligence, he is unable to obtain vital information bearing on the existence of his claim.
Equitable estoppel in this context prevents a defendant from asserting untimeliness where the
defendant has taken active steps to prevent the plaintiff from filing a *timely* Charge of
Discrimination with the EEOC. No party has alleged that this case involves waiver, equitable
tolling or equitable estoppel.

[7] With respect to most of Crayton's claims, Crayton's argument that the Department's
discrimination and retaliation was "continuing" is simply incorrect in light of the law as
stated in *Morgan*. A decisions relating to promotions, demotions, and transfers are discrete
acts. As previously stated, *Morgan* holds that discrete discriminatory acts are not actionable
if time barred, even when they are related to acts alleged in timely filed charges.

> to terminate the employee." *Cocke v. Merrill Lynch & Co., Inc.,* 817 F.3d 1559, 1561 (11th Cir. 1987).  And a "final decision" to terminate, "rather than actual termination, constitutes the 'alleged unlawful practice' that triggers the filing period.  Thus, the 180-day period is counted from the date the employee receives *notice* of the termination." *Id.* (internal citations omitted) (emphasis added).

*Wright v. AmSouth Bancorporation,* 320 F.3d 1198, 1201 (11th Cir. 2003).  "Moreover, the 180-day charge filing period does not run until the plaintiff is told that she is actually being terminated, not that she *might* be terminated *if* future contingencies occur."  *Stewart v. Booker T. Washington Ins.,* 232 F.3d 844, 849 (11th Cir. 2000) (emphasis in original).

> Beginning the charge-filing period any earlier would make little sense: to require a plaintiff to file a discriminatory termination charge with the EEOC prior to the receipt of notice of termination would be to require a filing prior to the occurrence of the discriminatory conduct, thereby charging the EEOC with responsibility for the arguably advisory task of investigating a hypothetical case of discrimination.

*Id.*

Several of Crayton's claims involve discrete discriminatory acts.[8]  In addition to his discrete discriminatory acts claims, Crayton seeks to litigate a claim that he was improperly subjected to a racially hostile working environment.  He contends that this racially hostile

---

[8]   These discrete discriminatory act claims involve discriminatory removal of privileges, transfer, demotion, and failure to promote.  There is ample legal precedent which defines discrete discriminatory act to include transfers, demotions and failure to promote.  Furthermore, the Court finds that the claim relating to the failure to return Crayton's state-owned automobile constitutes a discrete discriminatory act.  The Court will address the timeliness of Crayton's Charges of Discrimination with respect to each of these claims later in this opinion.

working environment began in 2002, when his work was scrutinized and criticized unfairly, and continued into 2006.  Specifically, he cites several problems in 2004, and an incident in the parking lot on June 29, 2006.  Unlike claims involving discrete discriminatory acts, hostile environment claims may be litigated so long as at least one of the events contributing to the hostile environment was presented to the EEOC in an Charge of Discrimination in a timely fashion.  Indeed, in *Morgan*, the United States Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan,* 536 U.S. at 106.

Because the Supreme Court has explicitly differentiated between discrete employment acts and a hostile work environment, many courts have concluded that a discrete act cannot be part of a hostile work environment claim and instead constitutes a separate unlawful employment practice.  *See, e.g., Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) ("If the flames of an allegedly hostile environment are to rise to the level of an actionable claim, they must do so based on the fuel of timely non-discrete acts."); *Grier v. Snow*, No. 1:04-CV-397-JTC, 2006 WL 5440387 at * (N.D. Ga. Mar. 15, 2006) (analyzing discrete discriminatory acts claims and their timeliness separately and apart from plaintiff's claims of a hostile working environment); *Patterson v. Johnson*, 391 F. Supp. 2d 140, 146 & n.5 (D.D.C. 2005) (concluding that: (1) discrete acts that occurred more than the relevant

number of days before the EEO complaint were time barred; (2) "plaintiff cannot cure his failure to timely exhaust his complaints about these incidents by sweeping them under the rubric of a hostile work environment claim" because discrete acts are not part of the same unlawful employment practice; and (3) the law does not support the notion of "hybrid claims"); *Rojas v. Principi*, 326 F. Supp. 2d 267, 275-76 (D. Puerto Rico 2004) (holding that "discrete acts [such as failure to select, written counseling, and a proposed reprimand] of discriminatory conduct constitute independent claims subject to individual limitations periods and may not be used as grounds for extensions based on the continuing violations doctrine"); *Lester v. Natsios*, 290 F. Supp. 2d 11, 32 (D.D.C. 2003) (noting that courts have been reluctant to transform reference to disparate acts of discrimination into a hostile work environment claim). This Court is persuaded that these cases correctly apply the law. Thus, it rejects Crayton's arguments that all of his claims were properly and timely raised with the EEOC because they were "continuing" rather than arising out of discrete acts. This argument is simply based on an erroneous understanding of the currently applicable law.

A court faced with a challenge to an employment discrimination plaintiff's ability to litigate certain claims must start by ascertaining the permissible scope of a judicial complaint. This task requires the Court to first review the Charge of Discrimination that the plaintiff filed with the EEOC. *See, e.g., Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985); *Robinson v. Regions Finan. Corp.*, 242 F. Supp. 2d 1070, 1079 (M.D. Ala. 2003). No action alleging a violation of Title VII may be brought unless the alleged discrimination has been

16

made the subject of a timely filed EEOC charge.  *See, e.g., Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000); *Robinson*, 242 F. Supp. 2d at 1079.  "Not all acts complained of, however, need have been included in the EEOC charge; rather, an employee may include in her lawsuit a claim for injury resulting from any practice which 'was or should have been included in a reasonable investigation of the administrative complaint.'" *Robinson,* 242 F. Supp. 2d at 1079 (citing *Griffin*, 755 F.2d at 1522).  "Thus, an employee's lawsuit is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of a charge of discrimination."  *Robinson*, 242 F. Supp. 2d at 1079 (citing *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).  Mindful of these legal precepts, the Court must start by examining the content of Crayton's Charges of Discrimination.

### 2.  Content of Crayton's Charges of Discrimination

On September 27, 2006, Crayton filed a Charge of Discrimination with the EEOC in Birmingham.[9]  In this Charge, Crayton alleged race discrimination and retaliation between July 28, 2006 and September 26, 2006.  Specifically, he complained that when Lance Hester ("Hester") became his supervisor,[10] Crayton began to be subjected to "adverse terms and conditions of employment" because Hester constantly challenged decisions Crayton made about particular products despite the fact that, in Crayton's view, Hester had no expertise in

---

[9]  A copy of this Charge of Discrimination can be found in the record at Doc. # 18 Ex. 7.

[10]  It is undisputed that this occurred in 2003.

17

the area in which Crayton worked.  Crayton also stated in his Charge that in June of 2006, he had complained to the ASEA about alleged race discrimination against him and other African-American employees.  Thereafter, on July 28, 2006, he was reassigned to a recently created position of Genetically Modified Plant and Plant Products Director and he contends that his prior position of Seed Program Director was awarded to a less qualified Caucasian employee.

On May 3, 2007, Crayton filed a second Charge of Discrimination with the EEOC.[11] Once again, Crayton complained of race discrimination and retaliation.  This time he purported to address acts of discrimination which occurred between December 5, 2006 and May 2, 2007.  In this Charge, Crayton characterized his transfer to the new position on July 28, 2006 as a demotion.  Crayton explained that after he had filed his first Charge of Discrimination with the EEOC, his supervisor required him to enroll in an EAP, which he protested.  Crayton also complained about his supervisor allegedly holding back on an annual job performance appraisal and delaying his eligibility for a merit pay raise.

Significantly, many of the things about which Crayton would complain in these lawsuits are not mentioned in either of his EEOC Charges of Discrimination.  For example, strikingly absent from either Charge of Discrimination are any allegations of any acts constituting a hostile environment within the 180 days prior to the filing of the EEOC

---

[11]  A copy of this Charge of Discrimination can be found in the record at Doc. # 18 Ex. 10.

Charge. Conversely, at least one of the things about which he did include complaints in one of his EEOC Charges of Discrimination, namely the allegedly delay in his performance appraisal, is not being litigated in this lawsuit because Crayton failed to include any contentions about this performance appraisal in his contentions for the Order on Pretrial Hearing, which supplants the pleadings.

### 3. Timeliness of Crayton's Discrete Act Claims

#### a. Discriminatory Failure to Promote in 2003

Crayton cannot pursue his claims of discrimination arising out of the failure to promote him to any position prior to March 31, 2006,[12] because, as to those claims, his Charge of Discrimination was untimely. Specifically, this means that Crayton's claims arising out of the The Department's failure to promote him to the position of Division Director in April of 2003. Under the applicable case law, a failure to award a promotion is a discrete discriminatory act which an employee must complain to the EEOC within the time allowed by law. It is undisputed that Crayton did not file a Charge of Discrimination with the EEOC within 180 days after his April 30, 2003 application for the position of Division Director was rejected, and Hester was hired for the position instead. Therefore, this Court may not entertain Crayton's claim challenging that promotion pursuant to Title VII. Moreover, there is no evidence before this Court that Crayton ever identified the failure to

---

[12] March 31, 2006 is 180 days prior to September 27, 2006, the date on which Crayton signed and filed his first charge of discrimination with the EEOC.

promote him in 2003 as discriminatory in any of his communications with the EEOC. Simply put, Crayton has failed to properly and timely exhaust any claims for any alleged discrete act of discrimination prior to March 31, 2006. For these reason, the Department's Motion for Summary Judgment is due to be GRANTED with respect to all claims relating the promotion of Hester to Division Director in April of 2003 and to any discrete discriminatory acts completed prior to March 31, 2006. Any such claims in this suit are due to be DISMISSED WITH PREJUDICE. This ruling does not preclude Crayton from litigating other claims for which he did timely exhaust the administrative prerequisites to suit, nor does it preclude mention of the 2003 promotional decision in the case as possible background circumstantial evidence, but it does preclude him from seeking an award of damages for claims not properly and timely taken to the EEOC.

### b. Lateral Transfer of Crayton in July of 2006

Crayton's claims of alleged discrimination and retaliation with respect to his transfer or constructive demotion to the position of Genetically Modified Plant and Plant Products Director in July of 2006 was timely set forth in a Charge of Discrimination filed with the EEOC on September 27, 2006. Thus, the applicable administrative prerequisites do not bar Crayton from litigating this claim.

### c. Crayton's Claim About the State-Owned Vehicle

When it is viewed in the light most favorable to Crayton, it appears that the evidentiary record before this Court may establish that Crayton discovered the alleged

disparate treatment with respect to state-owned vehicles in June of 2006. It does not appear that this issue was ever presented to the EEOC in either of Crayton's Charges of Discrimination. However, because the first EEOC Charge specifically mentions Crayton's June of 2006 complaint to the ASEA about race discrimination, which complaint was largely about alleged disparate treatment concerning the state-owned vehicles, the Court must reject the Department's contention that Crayton failed to properly raise this claim in his EEOC Charge. It is clearly within the scope of the EEOC investigation which could reasonably have been expected to grow out of his September of 2006 Charge of Discrimination.

### d. Crayton's Remaining Discrete Act Claims of Retaliation

There can be no serious contention made that Crayton failed to timely exhaust any administrative requirement with respect to his pending claims of retaliation.

### 4. Timeliness of Crayton's Hostile Environment Claim

This case presents an odd circumstance indeed. The Court is compelled to find that all of Crayton's hostile environment claims are barred by his failure to timely exhaust his administrative remedies with respect to such claims. This is an odd result because clearly one of the events on which Crayton now relies to establish a hostile environment claim, namely in events on June 29, 2006 relating to his conflict with the Commissioner which started in the parking lot, would clearly have been timely if it had been in any way mentioned in the Charges of Discrimination and under the current law one timely event can preserve a hostile environment claim based on several earlier events not timely taken to the EEOC

which constitute part of the same pattern.  When making his Charges of Discrimination with the EEOC, Crayton only mentioned one issue which hints at a hostile work environment, constantly being challenged by Hester shortly after Hester became his supervisor.  It is undisputed that Hester became Crayton's supervisor in 2003, which is far more than 180 days prior to his September 27, 2006 Charge of Discrimination.  At this point in the litigation, Crayton would have this Court send his hostile environment claim to the jury based on incidents which occurred in 2004 and an incident in June of 2006, which had nothing to do with Hester.  Nevertheless, these incidents on which he now relies were never disclosed to the EEOC, nor would the EEOC investigation reasonably encompass such events.  For these reason, the Department's Motion for Summary Judgment is due to be GRANTED with respect to all hostile environment claims.  Any such claims in this suit are due to be DISMISSED WITH PREJUDICE.

## C. ALTERNATE ANALYSIS OF CRAYTON'S HOSTILE ENVIRONMENT CLAIM

Even assuming *arguendo* that Crayton's hostile environment claim was not barred by his failure to timely exhaust his administrative prerequisites to suit, the Court finds that the Department is entitled to summary judgment on Crayton's hostile environment claim.  It has long been recognized that "[t]he phrase terms, conditions, or privileges of employment evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily

22

hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted). To establish a claim that he was subjected to a racially hostile work environment, Crayton must need to show that (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee, such as race; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for the hostile environment under a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002). An employee claiming hostile environment must proffer evidence from which a reasonable jury could find that he experienced a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). As a matter of law, the Court finds that Crayton has offered insufficient evidence from which a jury could find that he has established such a claim. For this additional reason the Department's motion is due to be GRANTED with respect to Crayton's hostile environment claims.

## D.   ALLEGED DISCRIMINATION WITH RESPECT TO THE STATE-OWNED VEHICLE

Crayton contends that he was discriminated against on the basis of his race with respect to the Department's failure to reassign a State-Owned vehicle to him, presumably in June of 2006. A plaintiff can establish a *prima facie* case by showing that: (1) he was a

member of a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action by his employer; and (4) similarly situated employees outside of the protected class were treated more favorably. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d at 1087. Crayton has failed to offer sufficient admissible evidence from which a reasonable jury could find that he has established a *prima facie* case with respect to this claim. Specifically, the Court finds no evidence that with respect to the assignment of State-Owned vehicles Crayton experienced an adverse employment action[13] at the hands of his employer. When the evidence is viewed in the light most favorable to Crayton it simply does not constitute a event that under the applicable law is actionable as a discrete act of discrimination. Furthermore, Crayton has not sufficiently established that the proffered Caucasian comparators who he contends received more favorable treatment were sufficiently similarly situated to him to make them appropriate comparators under the applicable legal

---

[13] In the Eleventh Circuit, an employee bringing a claim of discrimination must establish an adverse employment action by showing that an "ultimate employment decision" occurred or by making some other showing of substantiality. *See, e.g., Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008). An ultimate employment decision is one such as a decision to terminate, demote, or refuse to hire. *Id.* Conduct falling short of an ultimate employment decision must, in some substantial way alter the employee's compensation, terms, conditions, or privileges of employment, deprive him of employment opportunity, or adversely affect his status as an employee. *Id.* Such changes must be serious and material. *Id. Accord, Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209 (11th Cir. 2008); *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1245 (11th Cir. 2004); *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232 (11th Cir. 2001). Importantly, the employee's subjective view of the significance and adversity of the employer's action is not controlling and the employment action must be materially adverse as viewed by a reasonable person in the circumstances. *Butler*, 536 F.3d at 1215.

paradigm.  For this reason, the Court find that the Department's Motion for Summary Judgment is due to be GRANTED with respect to this race discrimination claim and the claim is due to be DISMISSED.

## E.  DISCRIMINATORY CONSTRUCTIVE DEMOTION CLAIM

Crayton contends that the decision to transfer him from the position of Seed Program Director to the position of Genetically Modified Plants and Plant Products Director in July of 2006 constituted race discrimination.  Specifically, he characterizes this lateral transfer which he concedes did not change his rank, his salary, or his benefits, as a "constructive demotion."  The Department disagrees.

As previously explained, Title VII plaintiffs must be able to establish a *prima facie* case of discrimination in order to survive a properly supported motion for summary judgment by an employer.  Here, it is undisputed that Crayton is a member of a protected class, but the Department argues that his claim of race discrimination predicated on the transfer in July of 2006, fails because Crayton lacks sufficient evidence that he suffered an adverse employment action.  An employment action must affect a term, condition or privilege of employment, and is not adverse merely because the employee dislikes it or disagrees with it.  *See, e.g., Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998); *Otu v. Papa John's USA, Inc.*, 400 F. Supp. 2d 1315, 1332 (N.D. Ga. 2005).

When the Court considers the applicable legal standard it is compelled to conclude that the transfer was apples and apples, a lateral career move.  Crayton received the same

salary and the same benefits.   He retained the same ranking and a title of identical importance.  He had comparable duties.  This lateral transfer with full retention of benefits could not reasonably be described as an adverse employment action.   Whether an employment action is adverse is determined based on an objective standard.  *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1448-53 (11th Cir. 1998).  A lateral transfer that does not result in "lesser pay, responsibilities, or prestige" is not adverse.  *Id.  Accord, Otu*, 400 F. Supp. 2d at 1333; *Sonnier v. Computer Programs & Sys., Inc.*, 168 F. Supp. 2d 1322, (S.D. Ala. 2001); *Greene v. Loewenstein, Inc.*, 99 F. Supp. 2d 1373, 1381-84 (S.D. Fla. 2000). Simply put, Crayton has failed to produce sufficient evidence from which a reasonable jury could conclude that the reassignment to the Genetically Modified Plants and Plant Products Director with the same step, grade, and rate of pay and benefits was so intolerable that a reasonable person could not have endured it and thus would have been forced to decline it. Consequently, Crayton fails to establish a *prima facie* case of constructive demotion and fails to establish the requisite adverse employment action to allow this claim to survive the motion for summary judgment.  For this reason, the Department's Motion for Summary Judgment is due to be GRANTED as to this claim.

## F.  RETALIATION CLAIMS

At this point in the litigation, Crayton raises to events which he contends constitute actionable retaliation against him in violation of Title VII: (1) his transfer in July of 2006 to the position of Genetically Modified Plants and Plant Products Director and (2) an incident

in November of 2006 when his supervisor required him to enroll in an EAP.  All other claims of retaliation have been abandoned.

The Department contends that Crayton failed to timely raise these claims, but that contention has already been rejected.  The Department further contends that Crayton has failed to establish a *prima facie* case with respect to these claims.  It is this contention to which the Court will now turn its attention.

"Title VII's anti-retaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington Northern & Santa Fe R.Y. Co. v. White*, 548 U.S. 53, 59 (2006) (citing 42 U.S.C. § 2000e-3(a)).  The term "discriminate against" has been found to refer to "distinctions or differences in treatment that injure protected individuals." *Id.* at 59-60 (collecting cases).  Thus, to establish a *prima facie* case of retaliation forbidden by Title VII, the plaintiff must normally show that: "(1) [he] participated in an activity protected by Title VII; (2) [he] suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir. 2000) (setting forth *prima facie* elements).

The Department admits that the first element of the *prima facie* case is established because of Crayton's June of 2006 complaints of race discrimination to the ASEA and his

27

September 27, 2006 Charge of Discrimination with the EEOC. The Department argues that it is entitled to summary judgment because the actions about which Crayton complains do not constitute adverse employment actions and because Crayton has offered insufficient evidence of a causal connection between the protected conduct and the adverse employment decision.

The Court finds that under the applicable legal standard, a reasonable jury could find that either of the actions which Crayton contends constituted retaliation were adverse employment actions as the Supreme Court has defined that term for retaliation claims. Until 2006, the decisions of the Eleventh Circuit Court of Appeals addressing the degree of materiality required for an event or act to constitute an adverse employment action in the context of a retaliation claim required a similar degree of materiality as claims of discrimination. However, in 2006, the United States Supreme Court changed this standard when it concluded that Title VII's substantive provision and its anti-retaliation provision are not coterminous. *See Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. at 67. The Supreme Court has held that in order to sustain a Title VII retaliation claim, an employee must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. at 67-68 (internal citations and quotations omitted). Thus, the protection provided against retaliation is protection against employer actions that are likely to deter

victims of discrimination from complaining to the EEOC, rather than petty slights, minor annoyances, or a lack of good manners. *Id.* at 68.

The Court notes that the Department's argument that the lateral transfer and the EAP referral did not constitute adverse employment actions were based on cases prior to the Supreme Court's clarification of this area of the law. While this is understandable given that there are cases under the old standard from within the Eleventh Circuit which involve similar claims and which conclude that such claims did not constitute adverse employment actions, it is not acceptable to fail to make arguments based on the current state of the law unless it is made clear to the Court that one is advocating for a change in the law. When the correct and current legal standard is applied, the Court is compelled to find that both the involuntary lateral transfer and the involuntary EAP referral are things that a reasonable jury could well find that a reasonable employee would have found materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Accordingly, the motion for summary judgment is due to be DENIED to the extent that it is predicated on a contention that the alleged acts of retaliation are not sufficient to constitute an actionable adverse employment action in the context of a retaliation claim.[14]

_____

[14]  The Court concedes that at least with respect to the EAP referral it may be that Crayton has failed to offer evidence that rises to the level of an adverse employment action even under the Supreme Court's decision in *Burlington Northern*. *See, e.g., Robinson v. Fulton County, Ga.*, No. 1:05-cv-2250-RWS, 2008 WL 78711 at *13 (N.D. Ga. Jan. 4, 2008) (holding that requiring an employee to attend a mandatory EAP program, and other events

The Court finds sufficient evidence from which a reasonable jury could find that there exists a causal connection between the adverse employment actions and Crayton's protected conduct.  "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta,* 212 F.3d at 590 (internal citation & alteration omitted). "Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent. When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions of the decision-maker."  *Walker v. Prudential Prop. & Cas. Ins. Co.,* 286 F.3d 1270, 1274 (11th Cir. 2002) (internal citations omitted).

Crayton argues that the close temporal proximity between the protected conduct, namely his complaints to the ASEA and his first EEOC Charge of Discrimination, and the alleged adverse employment actions against him, namely his lateral transfer and his referral to the EAP, constitutes sufficient circumstantial evidence that there is a causal connection between the participation in the protected activity and the adverse employment decision. Indeed, close temporal proximity between the protected conduct and the adverse action can constitute sufficient circumstantial evidence of causation in some, but not all, circumstances. *See, e.g., Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (citing affirmatively several court of appeals decisions for the proposition that a three to four month

did not rise to the level of an adverse employment action for a retaliation claim even under the *Burlington Northern* test).

gap is insufficient to establish the causal relation prong in a retaliation case); *Wascura v. City of South Miami,* 257 F.3d 1238, 1244-45 (11th Cir. 2001) (While a close temporal proximity between two events may support a finding of a causal connection between those two events, the three and one-half month period between plaintiff's protected conduct and the adverse employment action challenged does not, standing alone, establish a causal connection); *Keel v. United States Dep't of Air Force,* 256 F. Supp. 2d 1269, 1291 (M.D. Ala. 2003) (more than seven month gap between protected conduct and allegedly retaliatory conduct was insufficient as a matter of law to establish the causation element of the *prima facie* case of retaliation).  For the temporal proximity to suffice to establish the causal connection prong of the *prima facie* case, the employers' discovery of the protected conduct must immediately precede the adverse action for the negative inference to attach.  *Id.*  More importantly for this case, "[i]n order to satisfy the 'causal link' prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." *Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1197 (11th Cir. 1997).  Here, the Department is entitled to summary judgment on the retaliation claims because Crayton has failed to provide the Court with any evidence from which a reasonable jury could find that the Department was actually aware of Crayton's complaints of race discrimination to the ASEA before his lateral transfer in July of 2006, nor has he provided any evidence from which a reasonable jury could find that the Department, and specifically his supervisor, was aware of his EEOC

31

Charge of Discrimination before Crayton was referred to the EAP program which resulted in his being interviewed for an hour on one occasion by a mental health professional.  For this reason, the Court finds that Crayton has not proffered sufficient evidence in support of his retaliation claims to create a triable issue of material fact or a question of law requiring trial and summary judgment is due to be GRANTED in favor of the Department on the retaliation claims.

Even assuming *arguendo* that Crayton had sufficiently shown the *prima facie* case of retaliation as to either the transfer or the EAP referral, the Court would still be compelled by law to grant the Department's motion for summary judgment.  The Department has offered legitimate non-retaliatory reasons for both these actions.  Crayton has failed to offer any evidence from which a reasonable jury could find that these non-retaliatory reasons are pretextual.  Indeed, in his deposition testimony Crayton concedes the factual basis proffered by the Department for these two decisions with respect to his employment.  He concedes that he had knowledge and expertise which made him qualified for the newly developed and important position of Genetically Modified Plants and Plant Products Program Director.  He also admits that this area is likely to continue to grow in importance over the years.  He also admits that several of the events underlying the Department's stated reasons for asking him to contact the EAP program and be evaluated actually occurred.  In addition to these concessions, Crayton offers nothing but suspicion and conjecture as to the "real" reasons for the transfer and the EAP referral.  He simply has insufficient evidence of these claims as a

matter of law.  For this additional reasons, the Department's Motion for Summary Judgment is due to be GRANTED as to Crayton's claims of retaliation.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

(1) Crayton will only be allowed to seek damages or other relief as to claims set forth in the Pretrial Order (Doc. # 44).  All other claims are DISMISSED by his failure to include them in the Pretrial Order (Doc. # 44).

(2)  To the extent that the Department's Motion for Summary Judgment (Doc. # 16) seeks judgment as a matter of law on any claims Crayton has now abandoned by failing to include them in his contentions in the Pretrial Order (Doc. # 44), that motion is DENIED as MOOT as to those claims.

(3)  The Department's Motion for Summary Judgment (Doc. # 16) is GRANTED as to all of Crayton's remaining claims of discrimination and retaliation, and all such claims are DISMISSED WITH PREJUDICE.

(4) A separate final judgment will be entered consistent with this Memorandum Opinion and Order.

(5) Plaintiff's counsel is ADMONISHED that the quality of the legal brief (Doc. # 23) submitted in opposition to the Department's Motion for Summary Judgment is unacceptable. Plaintiff's counsel should never again submit a brief to this Court which fails to cite to applicable legal authorities and fails to properly cite the factual record.  It is not the job of

this Court to comb through the factual record to try to find facts that make any parties

argument, nor it is the role of the Court to locate applicable legal precedent for arguments

advanced by the parties.

DONE this the 18th day of December, 2008.

_____
/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE